No. 11944

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

_____

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JOSEPH LEE ALLEN,

Defendant and Appellant.

_____

Appeal from:  District Court of the Eighteenth Judicial District,
              Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Berg, O'Connell, Angel & Andriolo, Bozeman, Montana.
        Richard Andriolo argued, Bozeman, Montana.

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana.
        J. C. Weingartner argued, Assistant Attorney General,
        Helena, Montana.
        Thomas Olson, County Attorney, Bozeman, Montana.

_____

                            Submitted:  April 25, 1973

                              Decided:  MAY - 9 1973

Filed:  MAY - 9 1973

_Thomas J. Kearney_
                                    Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a conviction for first degree burglary. Appellant was tried in the district court of Gallatin County with the Hon. Jack D. Shanstrom presiding. A sentence of fifteen years was imposed upon appellant following his conviction.

The record shows that during the early morning hours of December 8, 1969, the Eagles Club Bar in Bozeman, Montana was burglarized. There was no forced entry and the crime was accomplished by the burglar hiding himself in the building until the club closed at 1:00 a.m. He then wheeled the safe from the office where it was kept into the bar area. This was done so he was not visible from the outside of the building. The safe was turned on its back, the door pried off, and over $5,000 in small bills, fives, tens and twenties, stolen.

The crime was discovered when the janitor entered the building at 6:30 a.m. The police were immediately summoned and they began their investigation. In the course of that investigation a paper matchbook was found inside the safe. This matchbook along with other evidence taken from the club was forwarded to the F.B.I. laboratory in Washington, D.C. The F.B.I., through the use of chemicals, was able to develop a fingerprint on the front of the matchbook cover. The print was then matched to the fingerprints of appellant, which prints had been supplied to the F.B.I. by the Gallatin County sheriff's department.

Further evidence introduced at the trial linking appellant with the crime was that at approximately 4:00 a.m. on the morning of the burglary the Bozeman police ticketed the appellant's car for a parking violation. The automobile was parked directly in front of the Eagles Club. Appellant was identified by the bartender on duty that day as being in the

club twice on December 7, 1969. The bartender further testified that appellant had been in the club on one other occasion, at least, when he had used the telephone booth for an extended period of time. Testimony was put into the record that a person in the telephone booth could see into the office where the safe was kept. Later on the day of the crime appellant purchased a used car by trading in his old car and paying the difference of the purchase price, $900, in cash. The clerk handling the transaction for the dealership testified the cash payment was made up of small bills, mostly fives, tens and twenties. Three time-pay payments were made by appellant on the same day, all in cash in small bills. Two conflicting statements made by appellant were also put into the record. Appellant testified at the trial that he was with a friend of his until 11:30 p.m. on the night of the burglary. At that time he went to his car and it would not start so he left it there until the next morning when he returned and picked it up. At the time he was arrested he stated he was with his friend until 5:00 or 6:00 a.m. and then went home. The officers testified that appellant's car was not in front of the Eagles Club when they came to investigate the crime.

Counsel for Allen presents three issues on this appeal. The first issue is whether there was sufficient evidence to support the verdict and whether the judge should have instructed the jury to find appellant not guilty on that basis. The second issue is whether the court should have given a precautionary instruction concerning the fingerprint evidence. The appellant's proposed instruction No. 19 read:

> "You are instructed that to warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed."

The final issue also concerns the use of fingerprint evidence, being whether it was error for the court to refuse to give appellant's

offered instruction No. 20 which read:

> "You are instructed that where it appears that
> there were at the scene of the crime finger-
> prints other than those identified as the de-
> fendant's, and which are neither identified
> nor explained, the proof of the defendant's
> prints is not sufficient to support a con-
> viction."

The appellant's argument concerning the sufficiency of the evidence is that the evidence was circumstantial and therefore does not support the verdict, as he states:

> " * * * The only issue for the jury to decide
> was the identity of the individual or individ-
> uals involved.  Thus the State attempted to
> establish by proof of several pieces of evidence
> which when viewed separately or in their entirety
> are insufficient both in quality and quantity
> to support the verdict of the jury."

This Court has been faced with this issue in several previous cases.  Just what weight and use should be given to circumstantial evidence in a criminal trial?  We answered that question and established a test in State v. Cor, 144 Mont. 323, 326, 396 P.2d 86 (1964).  In that case we held:

> "Circumstantial evidence is not always inferior
> in quality nor is it necessarily relegated to a
> 'second class status' in the consideration to
> be given it.  The very fact it is circumstantial
> is not a sufficient allegation to justify a re-
> versal of the judgment for such evidence may be
> and frequently is, most convincing and satis-
> factory.  In any criminal case, evidence that
> is material, relevant and competent, will be
> admitted, 'nothing more and nothing less.'
> The test is whether the facts and circumstances
> are of such a quality and quantity as to legally
> justify a jury in determining guilt beyond a
> reasonable doubt.  If such be the case, then the
> court should not, indeed cannot, set aside the
> solemn findings of the trier of the facts."

This test was used recently in a first degree murder case where the evidence of guilt was based on circumstantial evidence. State v. Gallagher, ____Mont.____, ____P.2d____, 30 St.Rep. 467 (May, 1973).  In the instant case the evidence presented to the jury included:  a positive identification of a fingerprint found in the safe at the scene of the crime as being the appellant's;

the appellant was placed in the bar on the night before the burglary at two different times; his car was parked in front of the bar at about the time the burglary took place; the car was not there when the police arrived to investigate the crime; the payment of cash in small bills for an automobile on the day of the crime; three loan payments made on that day in small bills of currency; and the conflicting statements made by the appellant concerning his actions on the day of the burglary. In our opinion this is enough evidence both in quantity and quality to legally justify the jury finding the verdict that was found in this case.

It is safe to say the most damaging piece of evidence produced against the appellant was the fingerprint on the matchbook. The matchbook was found inside the safe by the investigating officers and sent to the F.B.I. laboratory where by the use of chemicals a fingerprint was developed on the cover. This print was identified by the F.B.I. as belonging to appellant from fingerprints supplied to the F.B.I. by the Gallatin County sheriff's department.

Appellant argues that the use of this evidence without a precautionary instruction "was extremely prejudicial to the defendant (appellant) as it allowed the jury to convict the defendant solely on the basis of his fingerprint on a transitory matchbook." In support of this position the appellant cites United States v. Van Fossen, 460 F.2d 38, 41 (4th Cir. 1972):

> "To warrant conviction the trier of fact must be able to reasonably infer from the circumstances that the fingerprints were impressed at the time the crime was committed."

Without commenting or taking a position on whether that case establishes the correct standard on fingerprint evidence it is the opinion of this Court that the case is not applicable on its

facts. In that case the only evidence connecting the defendant with the crime was his fingerprints and the court at page 41, held:

> " * * * The flaw in the government's case is the failure of the evidence to disclose when the crime was committed and when Van Fossen's fingerprints were placed on the items seized from Brown's shop. For this reason the prosecution rests on conjecture and suspicion. Because no evidence in the record suggests that the prints were impressed when the crime was committed, the jury could only have guessed at this conclusion."

Here, absent the fingerprint there is substantial evidence linking the appellant with the commission of the crime. The time of the commission of the crime had been determined within a few hours. While the F.B.I. expert could not say when the fingerprint was impressed on the matchbook, the jury could infer logically from his testimony that the appellant was the last person to touch the matchbook. The testimony by the F.B.I. expert on this point was:

> " * * * As I stated, frequently handling of this specimen would have destroyed that, if he would have placed his finger over this print which I developed or in the same spot chances are that print would have been of no value because it would have been destroyed.* * *"

This, along with the matchbook found inside the safe, which had been moved from its location to one where it was not visible from the street, laid on its back and its door pried open and over five thousand dollars in small bills removed, indicate this was not a "transitory" matchbook and gave the jury every right to believe it had to get into the safe after it had been opened and during the removal of its contents.

It was not error for the court to permit the use of the matchbook as evidence without appellant's requested instruction and the court did not err in refusing to give the cautionary instructions.

The Court finds no merit in the last issue. Appellant cites no case which supports his argument. To require this type of instruction would place too great a burden on law enforcement.

The judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Associate Justices