No. 12463

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

CHARLES R. WATKINS,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District, Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams argued, Billings, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
Thomas Beers, Assistant Attorney General, argued, Helena, Montana
Harold F. Hanser, County Attorney, Billings, Montana
Diane G. Barz, Deputy County Attorney, appeared, Billings, Montana

---

Submitted: October 1, 1973

Decided JAN 22 1974

Filed: JAN 22 1974

*Thomas J. Kearney*
Clerk

Honorable Paul G. Hatfield, District Judge, sitting for Justice John Conway Harrison, delivered the Opinion of the Court.

On October 31, 1972, defendant Charles R. Watkins was tried, and on November 1, 1972, convicted of burglary in the second degree in the district court, Yellowstone County. He was sentenced to a term of five years in the state prison. From this conviction and judgment he appeals.

Either late on May 5, 1972, or early in the morning May 6, 1972, the rear door of the Gorham Park Drug, located at Broadwater Avenue and 19th Street West in Billings, Montana, was found open by a merchant policeman. The owner-manager testified he had barred the rear door from the inside of the store and left the store through the front door, which he locked, at approximately 8:15 p.m. on May 5, 1972.

The testimony was uncontradicted that defendant frequented the store quite often; that defendant was in the drugstore on the evening of May 5 with a companion; that he stayed quite awhile; that he bought either Winston or Camel cigarettes, as the clerk recalled; and, that no employee of the store saw defendant leave the premises.

Testimony of the investigating officers revealed that, in their opinion, no forced entry of the premises was made. However, they did conclude that escape was made through the rear door. There was further testimony that someone had been hiding in the back storeroom. In fact, several Camel cigarette butts were found in a storage area between boxes. This was an area of the premises used for storage and not open to the public. Investigation also uncovered a pair of gloves which were dirty and greasy. The safe was peeled. Found at the safe were a screwdriver and a chisel, which did not belong to the store. Also found was the dial from the safe and the shaft housing from the inside of the safe, which the police marked.

Inventory of missing items given by the store manager to the police at the time of the investigation included a pistol with

its make, model and serial number; watches; cigarette lighters; and quite a bit of medicine from the pharmacy. There was also money and some narcotics missing from the safe.

On the morning of May 7, 1972, authorities, armed with a search warrant, searched the premises of Room 6, in the Uptown Motel, Billings, Montana. In the room was defendant Charles Watkins. The authorities found a pistol which matched in make, model and serial number the pistol reported stolen from the Gorham Park Drug; and a narcotics label with the Gorham Park owner's initials, which labels were kept on the narcotics in the safe at the drugstore, in the room. They also found in the room an attache case containing numerous drugs, along with some watches and cigarette lighters. These items were all similar to the items reported missing from the Gorham Park Drug, but they had no identifying marks and, therefore, were not positively identified. Also found was a wallet in a shaving kit in a box next to or on the bed in the room. In the wallet were two ID's belonging to defendant. Next to the box was found a paper sack containing brass, which together with pieces of the safe found at the scene of the crime were sent to the F.B.I. The F.B.I. reported this brass could have been from the same safe as the brass found at the scene of the crime.

Placed in evidence were two registration cards for Room 6 of the Uptown Motel. One of these cards listed the address of the signer as 317 South 27th Street. This address is the address of one-half of a duplex. There was testimony that the other half of this duplex was rented to a Charles Watkins and a Betty Jones about a year prior to the date of the crime. Also on this registration card was listed a license number of a car owned by a person known to associate with defendant. Finally, there was found in Room 6 of the Uptown Motel a laundry tag with Watkins's name on it and the address 2612 South First. Testimony indicated this address is located between 26th Street South and 27th Street South in Billings. Too, there was evidence of the statement made by defendant at the sheriff's office, which will be discussed with more particularity later.

Defendant contends that no burglary was committed because of the lack of forced entry. The attorney on appeal is not the same attorney who represented defendant at trial, and this argument was not presented at trial. As a matter of fact, in the closing argument to the jury the defense counsel said:

> "* * * Now we do not deny that a burglary must have taken place. The police say it took place, it must have taken place. But, Ladies and Gentlemen, this defendant didn't do it."

Further, the case law cited by defendant requiring a trespass, State v. Mish, 36 Mont. 168, 170, 92 P. 459, affirmed State v. Rodgers, 40 Mont. 248, 251, 106 P. 3, and carried out in State v. Starkweather, 89 Mont. 381, 386, 297 P. 497, is:

> "* * *'in order to constitute a burglarious entry the nature of the entry must be itself a trespass.' A trespass is the invasion of the possession of another. (Coburn Cattle Co. v. Hensen, 52 Mont. 252, 157 Pac. 177; Thrasher v. Hodge, 86 Mont. 218, 283 Pac. 219.)"

The two cases cited in the above quotation are civil cases. In this case, someone exceeded the invitation given as a business invitee and stayed in the store after business was closed, becoming a trespasser.

The principal contentions of defendant are (1) that the evidence viewed in its entirety was insufficient in law to justify conviction of the crime of burglary in the second degree; (2) that the pistol introduced in evidence was introduced without proper foundation laid for its admission; (3) that evidence of other crimes including the fact defendant was under surveillance for another crime was prejudicial and improperly introduced; (4) that the statement taken from defendant by the sheriff was coerced and should have been suppressed; and (5) that the closing argument of the prosecutor was prejudicial to the rights of defendant to a fair and impartial trial.

Concerning defendant's first contention, this Court in State v. Joseph Lee Allen, ____Mont.____, 509 P.2d 849, 850, 30 St.Rep. 532, 533, 534, examined a similar conviction. In Allen the Court said:

"The record shows that during the early morning
hours of December 8, 1969, the Eagles Club Bar
in Bozeman, Montana was burglarized. There was no
forced entry and the crime was accomplished by the
burglar hiding himself in the building until the
club closed at 1:00 a.m. He then wheeled the safe
from the office where it was kept into the bar area.
This was done so he was not visible from the out-
side of the building. The safe was turned on its
back, the door pried off, and over $5,000 in small
bills, fives, tens and twenties, stolen."

The same contention, lack of evidence, was made in Allen and

the Court said:

"This Court has been faced with this issue in
several previous cases. Just what weight and
use should be given to circumstantial evidence
in a criminal trial? We answered that question
and established a test in State v. Cor, 144 Mont.
323, 326, 396 P.2d 86 (1964). In that case we
held:

"'Circumstantial evidence is not always
inferior in quality nor is it necessarily rele-
gated to a "second class status" in the consider-
ation to be given it. The very fact it is cir-
cumstantial is not a sufficient allegation to
justify a reversal of the judgment for such evi-
dence may be and frequently is, most convincing
and satisfactory. In any criminal case, evidence
that is material, relevant and competent, will be
admitted, "nothing more and nothing less." The
test is whether the facts and circumstances are of
such a quality and quantity as to legally justify
a jury in determining guilt beyond a reasonable
doubt. If such be the case, then the court should
not, indeed cannot, set aside the solemn findings
of the trier of the facts.'

"This test was used recently in a first degree
murder case where the evidence of guilt was based
on circumstantial evidence. State v. Gallagher,
_____ Mont._____, _____P.2d ____, 30 State Rep.
467 (May, 1973)."

Again, in State v. Fitzpatrick, _____Mont._____, _____

P.2d _____, 30 St. Rep. 1052, 1060, this Court reiterated the rule

on circumstantial evidence. In the instant case there was suffi-

cient evidence to justify the conviction.

As to defendant's second contention--the introduction of

the gun-- the objection is that the state failed to introduce in

evidence the box in which the gun was kept and which was left at

the scene of the crime, or at least that the serial number intro-

duced at trial had not been compared with the box the gun had

originally come in. However, the officers did testify they were

- 5 -

given the serial number and that the gun recovered in motel Room 6 bore the same serial number as the one given them after the burglary in the inventory of missing articles. State v. Wilroy, 150 Mont. 255, 258, 259, 434 P.2d 138, sets out the rule:

> "Failure to either properly identify the article, or to prove that no substantial change has taken place in the article, while in custody, constitutes ground for an objection that the proper foundation has not been shown."

In this case a sufficient foundation was shown and as stated in Wilroy and in Fitzpatrick:

> "* * * we find the identification to have been sufficient. The lack of specific or positive identification marks is not of great import for the items were not so uncommon that a reasonable identification cannot be made. The lack of positive identification goes to the weight of the evidence rather than its admissibility. * * * It is sufficient if they are shown to be connected with the crime, and identified as such."

As to defendant's third contention--that evidence of other crimes including the fact defendant was under surveillance for another crime was prejudicial and improperly introduced in the case-- we have made a careful inspection of the record and find no merit in this contention.

As to the fifth contention--that the closing argument of the prosecutor was prejudicial to the rights of defendant to a fair and impartial trial when he related evidence not introduced. Again, we have examined the final argument of counsel set out in the transcript, and the case law in State v. Watkins, 156 Mont. 456, 481 P.2d 689; State v. Quigg, 155 Mont. 119. 467 P.2d 692; State v. Lucero, 151 Mont. 531, 445 P.2d 731; and State v. Jensen, 153 Mont. 233, 455 P.2d 63l. We find the remarks made by the prosecutor were not sufficiently prejudicial to require a mistrial.

The remaining matter is defendant's fourth contention-- that the statement taken from defendant by the sheriff was coerced and should have been suppressed. During the time after the execution of the search warrant on May 7, 1972, and the time defendant was charged with the crime by direct Information on July 21, 1972,

defendant on his own volition went to the sheriff's office and inquired as to obtaining his identification, which the sheriff had from the execution of the search warrant. Defendant contends that the statement taken at that time by the sheriff from him was coerced and should have been suppressed. Basically, the statement the sheriff took was merely a receipt for the identification which defendant wanted. The statement was required as a receipt for letting out of custody of the sheriff evidence that the search warrant had obtained, and it merely stated that the identification was his, the defendant Watkins.

The first question is whether or not the statement was voluntary. The trial court properly held the hearing outside the presence of the jury and found the statement to be voluntary before allowing its admission into evidence. State v. White, 146 Mont. 226, 236, 405 P.2d 761; State v. Lucero, 151 Mont. 531, 445 P.2d 731.

At the time defendant signed the receipt he was represented by counsel. He was read the Miranda warning before he signed the statement. He was told in part that he had a right to remain silent; that anything he said could and probably would be used against him; that he had a right to consult an attorney before making any statement; but that he could waive these rights and make a statement without consulting an attorney if he desired. The statement itself says it is voluntary. Watkins testified he understood the warning. There were no threats nor promises made nor other coercion to get him to give the statement. Again, it should be stated that he went to the sheriff's office on his own initiative and the only admission was that the identifcation was his, which is merely a receipt which the sheriff would require anyone to sign in order to obtain any property the sheriff might have.

Further, it should be remembered that Watkins himself was in the room at the time of the execution of the search warrant. The admission of the statement was not error.

For the above reasons, the verdict was justified by the

evidence. The pistol was properly admitted into evidence, and the trial court did not err in allowing statements made by the prosecution in closing argument, especially where no objection was made at the time.

The conviction of burglary in the second degree is affirmed.

-------------------------------------------
Hon. Paul G. Hatfied, sitting for
Justice John Conway Harrison.

We Concur:

_____
Chief Justice

_____

_____

-----------------------------------
Justices.