No. 81-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

RICHARD WAYNE MANTHIE,

       Defendant and Appellant.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula, The Honorable
John S. Henson, Judge presiding.

Counsel of Record:

    For Appellant:

        Ferguson & Mitchell, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Robert L. Deschamps, County Attorney, Missoula,
        Montana

---

Submitted on Briefs: January 14, 1982

Decided: FEB 23 1982

Filed: FEB 23 1982

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a conviction in the Fourth Judicial District, in and for the County of Missoula, of the charge of the crime of burglary, a felony. The defendant was convicted after trial by jury, and he appeals.

Two issues are presented on appeal:

1. Whether the evidence presented at the trial was sufficient to support the guilty verdict on the burglary charge.

2. Whether the testimony of the defendant's accomplice was sufficiently corroborated as a matter of law.

On the night of November 9, 1979, the defendant, Richard Manthie, and John Bryan, ex-Marines who had served together in the Pacific, decided to have a night on the town. At some point during the evening they went to the Amvets Club in Missoula, Montana, where they met a woman named Karen Wilson. She was in the bar with a roommate, Mary Borgeson, along with Mary's boyfriend, Burt Lande.

About closing time that night, Mary and her boyfriend Burt left the Amvets Club and went to the Blue Mountain Trailer Lodge, where Mary and Karen shared a trailer. Karen did not accompany them but instead went with the defendant and John Bryan to purchase some marijuana for which the women had pooled their monetary resources. However, at the time of purchase Karen was five dollars short and borrowed five dollars from John.

Following the purchase of the marijuana, they drove to the women's trailer, and all three went into the trailer and woke Mary up. From the testimony, Karen gave Mary her share of the marijuana, the four people had a beer or two,

-2-

and Karen left with a boyfriend who had come to get her. While the testimony is in conflict as to when the defendant and John Bryan left, it would appear that it was shortly after Karen's departure.

The defendant and John left the trailer court and ran off the road, wrecking John's car. After considerable difficulty, they drove the car to John's house and had a few beers. Then, to get the defendant home, John took his employer's truck, parked nearby, without permission and headed to the defendant's place in Florence. On the way, they passed the Blue Mountain Trailer Court and stopped to collect the five dollars Karen borrowed earlier in the evening.

From this point on the testimony is contradictory. John Bryan testified that he stopped at the trailer to get the money that Karen owed him, left the motor of the truck running, went inside without knocking or being invited, went to Mary's bedroom where she and her boyfriend were sleeping, woke Mary up and asked her to come into the living room. After being there a short time the defendant and John went into the second bedroom in the trailer with Mary and had sexual intercourse. They were interrupted by the return of Karen and her boyfriend and left the trailer by the back door. When they got to the truck they found that the motor had been turned off and the keys were gone, so the two of them left by foot. John also testified that when they left the trailer the defendant had a wallet with him from which he took some money and thereafter put the wallet on a utility pole near the trailer court.

Mary Borgeson's testimony was similar to that of John

-3-

Bryan. She testified that when John and the defendant were originally in the trailer, she told them to leave and did not indicate that she wanted them to return. Later, she testified that she was awakened by John poking her and that she woke up and saw John and the defendant standing over her bed. The two men told her to come into the living room and talk about things and she complied. She testified that thereafter she was raped by the two men and that the defendant took from her boyfriend's pants a wallet containing approximately twenty-five dollars.

The defendant's testimony is substantially different from that produced by the State. He testified he did not know exactly why he and his friend John returned to the trailer on the trip down to Florence, but that it was either because John wanted to get his money back or that Mary had earlier invited them to return. He testified that they went to the trailer, knocked and that Mary invited them in for a beer. He further testified that Mary willingly engaged in sexual intercourse with him. He denied any knowledge of the theft of Burt Lande's wallet. In addition, the defendant testified that he and his friend John did not flee from the trailer but left at Mary's request when she heard her roommate returning.

The jury found defendant guilty on the charge of burglary, but were unable to reach a verdict on the charge of sexual intercourse without consent.

The first issue presented is whether there was sufficient evidence to support the verdict of guilty on the burglary charge. The defendant claims there is insufficient evidence to support his conviction on the burglary charge in

that the State failed to prove that he entered the trailer unlawfully on the night of the offense charged.

Section 45-6-204(1), MCA, provides: "A person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein."

The code further defines entering or remaining unlawfully as doing so without license, invitation, or privilege. Section 45-6-201(1), MCA.

Defendant contends he lawfully entered the trailer, that state law requires unlawful entry, and that the State therefore failed to prove its case. State v. Starkweather (1931), 89 Mont. 381, 297 P. 497; see also, Criminal Law Commission Comment to section 45-6-204, MCA. However, the State proved to the jury's satisfaction that the entry was unlawful.

As pointed out by this Court in State v. Sorenson (1980), ___ Mont. ___, 619 P.2d 1185, 1194, 37 St.Rep. 1834, 1845: "The jury is not bound to blindly accept defendant's version of the facts. It is free to pick and choose the evidence it wishes to believe." Here, the State presented for the jury's consideration sufficient evidence to show that the defendant and his accomplice entered the trailer illegally. John Bryan testified that he and the defendant entered the trailer without knocking and proceeded inside on their own. While there was no break-in or forced entry, none was required under the law. State v. Watkins (1974), 163 Mont. 491, 518 P.2d 259.

Mary Borgeson's testimony indicates that the men were strangers to her prior to that night and they were not

invited to return to the trailer after they came the first time. She testified that the first time she saw the men after they returned to her trailer was when they awakened her in her bedroom in the middle of the night, would not allow her to turn on the lights, and requested that she get out of bed and come into the living room of the trailer. The fact that she had left the front door unlocked so that her roommate could get in when she returned cannot be viewed as an invitation to the defendant and his accomplice or as permission for them to enter a darkened trailer.

This state's burglary statute prohibits not only entering but also remaining unlawfully in an occupied structure with the intent to commit an offense. Section 45-6-204(1), MCA. As previously noted in State v. Watkins, supra, we have held that when a person exceeds the limits of his privilege by remaining on the premises longer than is permitted, he thereby transforms his originally invited presence into a trespass that can form the basis of a burglary charge.

In answer to defendant's contention that Mary did not explicitly and verbally demand that the two men leave after they came the second time, and therefore, that the defendant and his accomplice were privileged to stay, Mary Borgeson testified that she was extremely frightened by the unexpected presence of the two men, that they made threatening remarks to her, and that they subsequently used physical force against her. Under these circumstances, the evidence shows that any alleged consent to the continuing presence of the defendant and his accomplice was clearly involuntary, coerced, and did not give the intruders legally cognizable

-6-

permission to remain on the premises.

We can reasonably infer from the evidence that the defendant and John Bryan intended to commit a theft in the trailer. They entered the trailer, went to the bedroom, woke Mary, and took her to the living room. There they discussed taking money or property. Finally, John and Mary both testified that the defendant went into Mary's bedroom where her boyfriend was sleeping, got his pants, and took his wallet.

John Bryan also testified that the defendant left the wallet on a utility pole stub outside the trailer, which the utility man discovered the next day. Under the circumstances, there is sufficient evidence to sustain the verdict on the burglary charge.

The second issue presented is whether the testimony by the alleged accomplice that the defendant had the wallet in his possession was sufficiently corroborated by independent evidence. The defendant argues that the State's evidence, independent of the accomplice's testimony, did nothing more than raise a suspicion that the defendant committed the crime or had the opportunity to do so.

In this state, to sustain a criminal conviction where testimony of an accomplice must be corroborated, section 46-16-213, MCA, requires:

> "A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense . . . unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

Over the years this Court has developed a substantial body of case law defining the type of proof required to corroborate an accomplice's testimony. Defendant correctly argues that, to be sufficient, the corroboration must do more than show that the offense was committed or that the accused had an opportunity to commit the crime charged. State v. Rose (1980), ___ Mont. ___, 608 P.2d 1074, 37 St.Rep. 642; State v. Owens (1979), ___ Mont. ___, 597 P.2d 72, 36 St.Rep. 1182. It is a longstanding rule that corroborative evidence need not in itself be sufficient to support the conviction or even make out a prima facie case against the defendant. State v. Ritz (1922), 65 Mont. 180, 211 P. 298; State v. Kemp (1979), ___ Mont. ___, 597 P.2d 96, 36 St.Rep. 1215. In addition, the independent evidence need not extend to every fact to which the accomplice testifies. State v. Holliday (1979), ___ Mont. ___, 598 P.2d 1132, 36 St.Rep. 1535. As this Court noted in State v. Williams (1979), ___ Mont. ___, 604 P.2d 1224, 1230, 36 St.Rep. 2328, 2336, "'. . . there should be some fact deposed to, independently of the evidence of the accomplice, which taken by itself leads to the inference, not only that a crime has been committed, but that the prisoner is implicated in it.' [Citation omitted.]"

The defendant contends that because the accomplice was the only witness to testify that he had possession of the stolen wallet, the corroborative testimony elicited by the State is deficient. Here, the crime charged was that of burglary, not theft. To prove the crime of burglary, the State had to prove that the defendant knowingly entered or remained unlawfully in the trailer with the intent to commit

-8-

a theft therein. Here, the independent evidence introduced at trial was sufficient to "tend to connect" the defendant with the commission of the burglary charge.

We have the testimony of the accomplice's wife who testified that in the early morning of November 10, 1979, she saw her husband and the defendant leave her home in a truck owned by the accomplice's employer. The roommate, Karen Wilson, and her boyfriend testified that the truck was parked in front of No. 10 Blue Mountain Trailer Court when they returned to the trailer, where they had earlier left Mary and her boyfriend. In addition, Mary Borgeson testified that the defendant and his accomplice entered her trailer without permission or invitation while she was sleeping, came to her bedroom and took her into the living room where the accomplice made threatening remarks to her and mentioned taking money from her boyfriend.

Of particular significance is Mary Borgeson's testimony that the defendant got Burt Lande's pants from the bedroom, and it was later discovered that his wallet was missing from his pants. As previously noted, that wallet was recovered and identified by Burt Lande as being his.

Reviewing the evidence in its totality, and all of this independent of the testimony of the accomplice, there was sufficient evidence presented, independent of the testimony of the accomplice, to meet the State's burden of proof.

The conviction of burglary is affirmed.

John Conway Harrison
Justice

We concur:

_Gene B Daly_

_Daniel J Shea_

_John C. Sheehy_

_____
Justices