No. 82-82

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

JACOB H. WOODS,

      Defendant and Appellant.

---

Appeal from:  District Court of the Eleventh Judicial District,
In and for the County of Flathead, The Honorable
Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellant:

        Moses Law Firm; Charles F. Moses, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Ted O. Lympus, County Attorney, Kalispell, Montana

---

          Submitted:    January 10, 1983

            Decided:    April 14, 1983

Filed:  APR 1 4 1983

              *Ethel M. Harrison*

                  Clerk

Hon. Daniel J. Shea
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles citations the matters listed below. Corrections have been made on our copy of the opinion.

Date:

May 20, 1983

Re:

State v. Woods, No. 82-82, April 14, 1983, dissenting

Page 15, line 9 - - 45-5-501(1)(c) should read 41-5-501(2)(c).  Also cited on page 15, line 11 and page 17, line 7 from bottom.
Page 15, line 10 - - 45-5-501(7) should read 41-5-501(7).  Also cited on page 15, line 15 and page 17, line 5 from bottom.
Page 17, line 9 from bottom - - 41-502(4) should read 41-5-502(4).
Page 18, line 7 - - 45-5-206 should read 41-5-206.

WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

Hon. John C. Sheehy
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana  59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

Date:

May 20, 1983

Re:

State v. Woods, No. 82-82, April 14, 1983

Page 2, line 11 from bottom - - Section 41-5-501(1)(c) should read Section 41-5-501(2)(c).

Page 3, line 11 from - - 455 U.S. 463 should read 445 U.S. 463.

Page 13, line 8 - - Morrissette v. United States should read Morissette v. United States.

WEST PUBLISHING COMPANY
Box 3526
St. Paul, MN 55165

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Jacob H. Woods was convicted of two counts of deliberate homicide in District Court, Eleventh Judicial District, Flathead County, involving the deaths of Ronald Johnson and Phillip Kessner. He appeals his conviction to this Court. We affirm.

The most important issues raised by Woods are that the Youth Court proceedings against him were constitutionally defective, and that he was charged in District Court on an information that was unsupported by affidavit or sworn testimony.

That the Youth Court proceedings against Woods were defective is eminently obvious. The petition initiating the proceedings in Youth Court did not state the facts constituting the offenses with which he was charged in ordinary, concise language so as to enable a person of common understanding to know what was intended. Section 41-5-501(2)(c), MCA. The petition did not include a list of the witnesses the State intended to use in proving the commission of the offenses against him. Section 41-5-501(7), MCA.

The petitioner was arrested in Woodward County, Oklahoma. After he was brought to Montana, he was detained without any sworn statement presented to the court that Woods needed to be placed in detention. Section 41-5-502(4), MCA.

However, by what process or authority Woods was arrested in Woodward County, Oklahoma, is not shown in the record. As far as the record discloses, he was not taken into custody

2

"by a law enforcement officer pursuant to a lawful order or process of [the] court." Section 41-5-302(1)(a), MCA.

A warrant for the arrest of Woods was issued out of the Youth Court on March 19, 1981. On that date he was already in the custody of the sheriff of Woodward County, Oklahoma. There is no provision in the Youth Court Act for the issuance of a warrant of arrest. Presumably the warrant of arrest, therefore, was issued under section 46-6-201, MCA. However, a warrant of arrest is invalid unless it is based upon probable cause, supported by oath or affirmation reduced to writing. Art. II, § 11, 1972 Mont. Const.; State ex rel. Wicks v. District Court (1972), 159 Mont. 434, 498 P.2d 1202; Petition of Gray (1970), 155 Mont. 510, 473 P.2d 532. Here there was no showing of probable cause, supported by oath or affirmation reduced to writing in the Youth Court proceedings, upon which to base the issuance of the warrant of arrest.

From the record, therefore, the initiation of the Youth Court proceedings against Woods on March 18, 1981, his earlier arrest in Oklahoma, and his subsequent detention in Flathead County during the Youth Court proceedings were all patently unlawful. Yet, it avails Woods nothing. An illegal arrest of a defendant does not preclude the State from proceeding on a criminal charge against him. In United States v. Crews (1980), 4~~3~~5 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537, the Supreme Court stated:

> "Insofar as respondent challenges his own presence at trial, he cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction (citing cases). The exclusionary principal of Wong Sun [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] and

3

> Silverthorne Lumber Company [251 U.S. 385, 40 S.Ct. 182, 64 L.Ed.2d 319 (1920)] delimits what proof the government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. Respondent is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." 100 S.Ct. at 1251.

See also, State v. Ritchson (1981), ___ Mont. ___, 630 P.2d 234, 239, 38 St.Rep. 1015.

We attach no weight, therefore, to Woods' contentions that his arrest and detention were unlawful or that the Youth Court proceedings were unlawful or not based upon probable cause, or that the petition filed in the Youth Court was deficient.

The crimes with which Woods was charged were alleged to have been committed before he became 18 years of age. He was under the age of 21 years at the time of his arrest. Therefore, the Youth Court had exclusive jurisdiction of the charges against him. Section 41-5-203, MCA. The Youth Court is required to retain jurisdiction unless such jurisdiction is terminated by a transfer of the proceedings to the adult criminal court. Section 41-5-205(1), MCA. Woods complains that the Youth Court proceedings against him should have been dismissed because those proceedings were not decided or determined within 15 days after service of the petition. (Section 41-5-516(1), MCA.) That provision must give way in this case, however, to the necessity for a transfer hearing whether Woods should be tried in the adult criminal court. Section 41-5-206, MCA, provides that after a petition in Youth Court alleging delinquency has been filed, the county attorney may move, before a hearing on the petition on its merits, to transfer the matter of prosecution to the District

4

Court if the youth were 16 years of age or more at the time of the unlawful conduct, for crimes such as criminal homicide. Section 41-5-206, MCA. The 15-day time limitation of section 41-5-516, MCA, has no application when the charges are subject to transfer to the adult criminal court, and a timely motion as here is made to transfer the proceedings.

Counsel for Woods objected to the transfer of the proceedings from the Youth Court to the District Court, but the Youth Court overruled his objections based upon the deficiencies in the Youth Court proceedings. Under the rule we have stated, even though his arrest and detention may have been illegal, that was not a bar to a subsequent prosecution nor could it be a bar to the transfer of the cause from the Youth Court to the District Court.

But Woods also contends that the information filed in the District Court against him was improper because it too was filed without supporting affidavit or sworn testimony and without leave of court. Woods claims that the information was improperly filed under Art. II, § 20, 1972 Mont. Const., because probable cause was not established after examination and commitment by a magistrate or after leave granted by the court. This contention again has no weight. It overlooks or ignores the transfer hearing held before the Youth Court. There, witnesses were sworn and their testimony given which established beyond cavil probable cause for the filing of the information in the District Court against Woods. The Youth Court made findings of fact which stated that the relevant evidence indicated reasonable grounds to believe that Woods had committed the acts alleged. The Youth Court further found that there was no facility available at Miles City or elsewhere in which Woods could be held or detained if the

5

cause was retained in the Youth Court and that the gravity of the offense required the transfer of the prosecution to the District Court. The Youth Court therefore ordered that an information charging Woods be filed in the District Court. Thus, Woods did in fact receive a hearing before an impartial magistrate, the Youth Court, which ordered the county attorney to file the information in the District Court. We determine that such procedure satisfied the state constitutional requirements that criminal actions in District Court be initiated either by information after examination and commitment by a magistrate or after leave granted by the court.

We now examine now Woods' contention that there was no corroboration of the testimony of accomplices sufficient to sustain his conviction. In connection with this issue, we must delineate the facts.

On September 13, 1978, at 11:25 p.m. on Highway 93, Flathead County police officers investigated the injury of two victims found on the shoulder of the highway. One was dead and one was alive. The officers found a 10-speed bicycle badly bent, a plastic grill and grill piece, green paint chips and other evidence. The victims were taken by ambulance to the hospital where one was pronounced dead on arrival and the other survived for approximately 35 to 40 minutes. It appeared that the victims had been run down on the highway while riding their bicycle. The police investigation was futile until 2 1/2 years later when an anonymous crimestoppers tip directed them to Bobby Aho, who gave police a signed statement about the night of the killing. His statement indicated that Woods had been driving around Kalispell with Jerry Schneider and Bobby Aho

6

in Tim Fraleigh's car. They met the victims, Kessner and Johnson, who Woods claimed owed him money for drugs. He was angry that they had neither the drugs nor the money and determined to "get them." He drove up behind them while the two were riding on one bicycle down Highway 93, sped up and swerved into them. Woods drove on after the collision.

Woods was arrested in Woodward, Oklahoma, on March 18, 1981. At the time, he was nearly 19 years old but was 16 years old at the time of the offense. The Montana Codes required that he be proceeded against in the Youth Court. We have already indicated the proceedings that followed his arrest.

Woods contends that the passengers in his automobile, Schneider and Aho, must be considered accomplices, and that there is no corroboration for their testimony. The State argues that they were not in fact accomplices and that in any event, their testimony was corroborated.

This issue has little weight. The District Court submitted to the trial jury as a question of fact whether Schneider and Aho were in fact accomplices and instructed the jury that their testimony must be corroborated if it found that they were in fact accomplices. Whether the jury so determined or not is of no moment now. There is more than sufficient corroboration of the testimony of Schneider and Aho in the evidence offered on the stand by Wanda Aho, who testified to a conversation she had with Woods where Woods told her that he had been driving the car and that he had killed Kessner and Johnson. That evidence suffices to corroborate and sustain the testimony of Schneider and Aho, if we should grant that they were accomplices. State v. Forsyth (1982), ___ Mont. ___, 642 P.2d 1035, 39 St.Rep. 540;

7

State v. Manthie (1982), ___ Mont. ___, 641 P.2d 454, 39 St.Rep. 350; State v. Mitchell (1981), ___ Mont. ___, 625 P.2d 1155, 38 St.Rep. 487.

The next issue offered by Woods is that the doctrine of cumulative trial error requires a reversal of his conviction.

The errors which Woods argues cumulated against him are:

1. The admission of exhibits 1, 2 and 3, photographs of the scene of the offenses,

2. The color photograph of Ronald Johnson, one of the victims,

3. A damaged bicycle, the testimony of Dale Gifford, respecting inconsistent statements by Woods,

4. The examination of Schneider about his own prior inconsistent statements to the police,

5. The examination of witness Fraleigh, and

6. The rebuttal testimony of the probation officer.

We find no error with respect to this testimony or evidence.

The photographs of the scene were testified to by the officers doing the investigation as depicting the scene as they remembered it. They did not take the pictures themselves nor were they taken under their direction. The officers came to the scene a very short time after the incident occurred. It is clear that the photographs would aid the jury in its factfinding process. State v. Austad (1982), ___ Mont. ___, 641 P.2d 1373, 39 St.Rep. 356, 362.

The color photograph of the deceased Ronald Johnson was objected to on the ground that its probative value was outweighed by its inflammatory nature. We agree with the State that the photograph lent credence to the testimony of the witnesses for the State that the death of the victim was

8

caused from the injuries they received when they were struck by the automobile. The photographs served a probative purpose and were admissible. State v. Logan (1970), 156 Mont. 48, 473 P.2d 833.

The objection to the admission of the bicycle was on the grounds of foundation, that there was no sufficient evidence that the bicycle was in the same condition as at the time of the incident and no chain of evidence establishing to whom it belonged and its condition prior to and after the incident. The testimony indicated that the investigating officer had picked up the bicycle at the scene of the offenses, and that it appeared to be in reasonably the same condition at trial as it was when he first picked it up. There was no indication at trial that the bicycle had otherwise been tampered with or was in worse condition than when it was found. We see no problem with the admission of the bicycle into evidence.

The testimony of Dale Gifford was to the effect that he had talked to Woods after his arrest while the Youth Court proceedings were pending, and that Woods had given him an alibi which was different from one given to Gifford earlier in 1979 when he had questioned Woods. The objection to this testimony, in Woods' briefs, seems to be that since Woods had not testified and did not eventually testify, such evidence of his statements was inadmissible. The testimony was relevant, and indeed was not objected to at the time of trial.

The medical testimony showed that no autopsies were performed on the bodies of the victims and the medical persons testified their conclusion that the collision with the automobile had brought about the injuries which caused

the deaths was an "educated guess." However, the medical testimony was that the type of injuries suffered by the victims were consistent with the injuries one might expect to receive if struck by an automobile. Again no objection was raised on this ground to the doctor's testimony at trial. The weight of the medical evidence was for the jury.

On direct examination, the State brought out from Jerry Schneider that he had made inconsistent statements earlier which were different from the statements he was making at the trial with respect to the incident. The objection was that the testimony of the earlier statements was hearsay and that it was improper for the State to preclude impeachment of Schneider by asking about the inconsistent statements first. Rule 801(d)(1)(A), M.R.Evid. provides that prior inconsistent statements of witnesses are not hearsay as long as the witnesses testifying at the trial are subject to cross-examination concerning the statement. Under that rule, prior inconsistent statements are admissible as substantive evidence, See Commission Comments, Rule 801, M.R.Evid.

The objection to Fraleigh's testimony comes about from a question by the county attorney to Fraleigh "did you carefully examine the car for any little scratch everytime Jake would return it to you?" The question could have been better phrased. It is not prejudicial.

Glenn Hufstetler, the chief probation officer, on rebuttal, testified that Woods' mother had told him that she knew Woods had been trying out the automobile which was involved in this incident for a three week period, including the date of the incident. Objection was made that the testimony was improper rebuttal evidence. The State contends that the testimony tended to overcome the legal effect of the

10

mother's evidence, which taken as a whole permitted the jury to infer that she kept careful watch over her sons and was well aware of what they did and where they were. The State contends that Hufstetler's testimony shows her awareness of the fact that Woods was driving Tim Fraleigh's car at the time the incident occurred. Again, the admission of testimony or evidence is mainly a matter of discretion with the lower court.

All in all, we find no cumulative error. Certainly any such cumulative error must be enough that taken as a whole it appears to the appellate court that the effect of the claimed cumulative error was to deprive the defendant of a fair trial. We cannot so conclude on the matters claimed here as cumulative error.

We turn now to examine Woods' contentions that the District Court erred in giving certain instructions objected to by Woods.

The full content of such instructions are:

"Instruction 9A:

"You are instructed that under Montana law, a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct.

"Instruction 14:

"You are instructed that if you find the defendant committed a homicide and that no circumstances of mitigation, excuse, or justification appear, you may then infer that the homicide was committed knowingly or purposely."

Woods' objections to court's instruction no. 9A are that it does not require the State to prove each element of the case beyond a reasonable doubt, it does not tell the jury what the

11

effect of presumptions supplying such proof is, and it shifts the burden of proof in a criminal case. Woods' objection to the court's instruction no. 14 is that it permitted the jury to infer every criminal state of mind required for a conviction, merely on the finding that a homicide had been committed.

Court's instruction no. 9A is stated in the words of the statute defining "knowingly," section 45-2-101(33), MCA.

The instructions given here, and the objections made by Woods thereto, are nearly identical to the instructions and objections that were raised in State v. Coleman (1979), ___ Mont. ___, 605 P.2d 1000, 1052-1056, 36 St.Rep. 1134, cert.den. 446 U.S. 970, reh.den. 448 U.S. 914 (1980). There, as here, the defendant contended that the given instructions offended the holding of the United States Supreme Court, particularly in Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39; and United States v. United States Gypsum Company (1978), 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854. With respect to the instruction nearly identical to court's instruction no. 14 here, we said:

> "The holding in Sandstrom is not to be construed to mean that whenever a trial court instructs a jury that it may resort to inference to determine subjective matters, such as knowledge or purpose, that thereby the State has been relieved of its burden of proof. The United States Supreme Court did not intend such limitation, and we do not find any such intention in the language of Sandstrom or its related cases. The jury was not allowed to rest solely upon the permitted inference in the Coleman case, but under the instructions, had to require such an inference to meet the standard as beyond a reasonable doubt.
>
> "The true test under Sandstrom, in determining the effect of an instruction such as the one disputed here is whether that instruction has the effect of allocating to the defendant some part of the burden of proof that properly rests on the State throughout the trial. See Holloway v. McElroy (D.

12

Ga. 1979), 474 F.Supp. 1363, 1368. We do not find that to have occurred here.

"On that basis we distinguish the <u>Coleman</u> instruction from those cases involving a burden-shifting presumption as in Mullaney v. Wilbur (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; and conclusive presumptions like those involved in <u>Sandstrom</u>, supra, Morissette v. United States (1952), 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, and United States v. United States Gypsum Company (1978), 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854. Instead, the inference is purely permissive, in the sense described in County Court of Ulster County v. Allen (1979), 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777." 605 P.2d at 1054.

With respect to the instruction similar to court's instruction no. 9A here, we said:

"When the holdings in <u>Sandstrom</u> and <u>United States Gypsum Company</u> are understood in that context, one may examine the instruction 'knowingly,' complained of here, and determine that the factfinding duty of the jury is not invaded by the court. The District Court is not usurping a jury function when it instructs 'a person acts knowingly with respect to the result of conduct [constituting a crime] when he is aware that it is highly probable that such result [would] be caused by his conduct.'

"The jury is not called upon to determine 'high probability' in place of 'reasonable doubt;' rather it is called on to determine the existence of defendant's <u>awareness</u>, beyond a reasonable doubt, that a high <u>probability</u> is that the result of his conduct makes his conduct criminal. The District Court here did not, by using this instruction, make it mandatory upon the jury to find defendant's <u>awareness</u> nor conclusively presume his <u>awareness</u>. That finding was left exclusively to the <u>jury</u>. In short, the instruction did not establish a presumption which testimony could not overthrow. On that basis, therefore, we find no merit in the second ground of attack." 605 P.2d at 1055.

Since we have fully examined the contentions that Woods makes here in connection with nearly the same instructions in <u>Coleman</u>, we see no reason now to find prejudice or error with respect to virtually the same instructions given here by the court.

The final issue that appears in the briefs is whether court-appointed counsel for purposes of appeal are entitled

to receive compensation for their services from the county involved. Counsel agreed at oral argument that such an issue has no part as a contention to be considered in connection with a defendant's appeal. We therefore make no decision here as to whether counsel is entitled to receive attorney fees at county expense.

The judgment of conviction of the defendant is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Mr. Justice Daniel J. Shea, dissenting:

I dissent and I would reverse the convictions.

Unlike the majority, I cannot overlook the defects in the Youth Court proceedings. The State did virtually nothing right and yet the majority has given its blessings to the conviction obtained by the initiation of patently defective Youth Court proceedings. Nor can I overlook the failure of the State to follow the law as a condition to filing the charges against defendant in District Court.

When the State first filed the petition in Youth Court, it failed to comply with sections 41-5-501(1)(c), MCA, 41-5-501(7), MCA, and 41-5-502(4) MCA. Section 41-5-501(1)(c), MCA, requires that the petition state the facts constituting the offenses in ordinary, concise language so that a person of common understanding would know what was intended. The majority agrees this section was violated. Section 41-5-501(7), MCA, requires that when the petition is filed that it include a list of the witnesses to be called in proving the offense, and the majority agrees this section was violated. And finally, if a youth is to be placed in custody, section 41-5-502(4), MCA, requires that a sworn statement accompany the petition alleging that the ". . . youth needs to be placed in detention or shelter care . . ." The majority also agrees that this section was violated.

Despite these defects, the State had defendant illegally arrested in Oklahoma and transported in custody to Montana. Once he arrived, the errors continued. Section 41-5-516(1), MCA, requires that a hearing must be begun "within 15 days after all service is completed." No exceptions are provided for if the youth is in custody, which is the situation here,

- 15 -

the statute provides a mandatory remedy for failure to hold such a hearing. Subsection (1) also provides that if the hearing is not begun within the 15 day period ". . . the petition shall be dismissed with prejudice . . ." The hearing was not begun with 15 days and the petition should therefore have been dismissed with prejudice. This being so, the Youth Court had no jurisdiction to order defendant to be proceeded against as an adult.

Following are the procedural facts. The petition was filed on March 19, 1981, and sometime between this date and March 24, 1981, defendant was arrested in Oklahoma and taken to Montana. On March 24, 1981, defendant, in custody, appeared before the Youth Court without counsel. Also, on March 24, 1981, the State filed a motion to transfer the case to District Court. On March 25, defendant again appeared, in custody, without counsel. The Youth Court then appointed the public defender.

On March 26, 1981, the defendant appeared with the public defender. The Youth Court set a hearing date for the motion to transfer--the date was set for <u>April 28, 1981</u>. From the time defendant first appeared in custody on March 24, 1981, until the date of the hearing, more than a month had gone by. The statute requires a dismissal if the hearing is not begun within 15 days of the date on which defendant is taken into custody.

On April 13, 1981, the State filed two documents with the Youth Court. The first was a warrant directed to the Oklahoma authorities for the arrest of defendant. It was dated March 19, 1981, and had obviously been served, for defendant had been arrested and returned to Montana on March 24. The second document was a summons issued to defendant's

- 16 -

mother, dated March 30, 1981, with a return of service dated March 31, 1981. Service, under section 41-5-516(1), MCA, was therefore complete on March 31. Based on section 41-5-516(1), the Youth Court was required to set a hearing by at least April 15, 1981, and a failure to begin the hearing on that date required a dismissal of the charges. As of April 15, 1981, there was nothing to transfer to District Court because the hearing had not begun.

Nonetheless, on April 28, 1981, the Youth Court heard the State's motion to transfer the case to District Court asking that defendant be treated as an adult for purposes of prosecution. On that date, co-counsel appeared on behalf of the defendant and the hearing was held. On May 26, 1981 the Youth Court ordered transfer of the case to the District Court. The Youth Court, however, had no authority to transfer the case to District Court. By failing to hold a hearing by April 15, 1981, the Youth Court had lost jurisdiction. Again, section 41-5-516(1), MCA, provides in part that the failure to begin the hearing after service is complete requires a dismissal with prejudice.

Here the majority admits the State failed to provide a sworn petition or statement which is necessary as a condition to holding a person in custody (section 41-502(4), MCA), the majority admits the State failed to state the charges as required by section 41-5-501(1)(c), and the majority admits that the State failed to provide defendant with a list of witnesses as required by section 41-5-501(7). In addition, I believe the State was required by section 41-5-516(1) to begin the hearing by April 15, 1981 under pain of dismissal with prejudice. No such hearing was held. Based on these defects, I have no difficulty in determining that the Youth

Court proceedings were so defective that the Youth Court had no jurisdiction to send the case to District Court--there was nothing to send.

I cannot agree with the majority that the 15 day hearing limitation does not apply if the State has made a motion to transfer the case to District Court to have the defendant prosecuted as an adult. Section 41-5-206, MCA, does permit the State to file a motion to transfer before a hearing, but I would hold nonetheless that the hearing, including a hearing on the State's transfer motion, must be heard within the 15 day period if the defendant is in custody. The majority holding defeats the purpose of the Youth Court statute which requires the hearing within 15 days. Its purpose is to provide a speedy hearing for anyone held in custody, even if that person is subject to being transferred to District Court to be prosecuted as an adult. The purpose is defeated when the hearing is not held within 15 days on the ground that the State pre-empted the speedy hearing requirement by the simple expedient of filing a transfer petition.

Nor can I agree with the majority that the Youth Court proceedings on the transfer motion can substitute for the requirements of Article II, § 20, which set forth the requirements for filing a criminal case in District Court. Article II, § 20, provides:

> ". . . All criminal actions in district court, except those on appeal, shall be prosecuted either by information, after examination and commitment by a magistrate or after leave granted by the court, or by indictment without such examination, commitment or leave."

We start, of course, with the Constitution. It provides that all criminal actions in District Court must proceed by

- 18 -

information or indictment. If by information, it must be after an examination and commitment by a magistrate or after the District Court has granted leave to file the information. The Constitution says nothing about a Youth Court having the powers of a magistrate. Nor does it say anything about a Youth Court wearing two hats simultaneously, that of Youth Court, and that of a committing magistrate.

I don't believe the framers of our Constitution intended that Article II, § 20, be short-circuited in the manner done here. Here, there was no complaint filed in justice court followed by a preliminary hearing and an order binding over to District Court. And there was no application for leave to file an information followed by an order permitting the information to be filed. Nor, of course, was there was a charge based on a grand jury indictment. Rather, the Youth Court found that defendant should be tried as an adult, and ordered that defendant be so tried. This order, under our Art. II, § 20, did not constitute leave to file an information. Nor did the Youth Court hearing double as a preliminary hearing before the magistrate.

Next comes the statutes. The State had two options: (1) to file charges in Justice Court followed by a preliminary examination and order binding defendant over to trial upon a finding of probable cause; or (2) to file in District Court an application for leave to file an information, the charges then not to be filed until the District Court granted leave. The State followed neither of these alternatives.

The applicable statutes are sections 46-11-101, 46-11-102, and 46-11-201, MCA. In seeking to comply with Article II, § 20, section 46-11-101 provides that an

information can be filed either <u>following</u> <u>a</u> <u>preliminary</u> <u>examination</u> or after the District Court has granted leave of court. Section 46-11-102 simply provides in part that all offenses triable in District Court must be by indictment or information. And section 46-11-201(1), sets forth the requirements for filing an information when the State seeks leave to file an information. Nowhere do these statutes, or any other statutes, provide that a Youth Court judge also wears the simultaneous double hat of a committing magistrate.

Based on the major defects in the Youth Court proceedings, and the failure of the State to abide by the Constitution (Art. II, § 20) in filing charges against defendant, I would reverse the convictions.


Justice