No. 84-47

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ROBERT LEE NORRIS,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Allen Beck argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter argued, Asst. Atty. General, Helena
Harold F. Hanser, County Attorney, Billings, Montana
Theresa O'Connor, Deputy County Attorney, Billings

---

Submitted: May 30, 1984

Decided: October 4, 1984

Filed: OCT 4 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Robert Lee Norris was convicted in the District Court, Yellowstone County, Thirteenth Judicial District, on jury verdict of two counts of sexual intercourse without consent and one count of aggravated kidnapping. On consideration of his appeal from those convictions, we affirm.

The principal issues raised by Norris on appeal are that the District Court had improperly allowed evidence of prior crimes committed with a person not the prosecutrix, and that the District Court improperly admitted rebuttal testimony to a fact issue not raised by the defendant Norris. Secondary issues are that the District Court improperly limited the scope of cross-examination of a witness not the prosecutrix, and that a cautionary instruction given by the court was legally insufficient.

We will set out a short statement of the facts from the record from the viewpoint of the prosecutor. On January 30, 1983, Ann Hanson, then 15 years old, went to a motel apartment for the purpose of babysitting the child of Lynn and Robert Norris. The babysitting job had been arranged by Ann's mother, who stipulated that Ann was not to stay in the motel apartment if she were alone with Robert Norris. Ann arrived at the motel at approximately 4:00 p.m., where Lynn and Robert were present. A friend of Norris', Carl Barnes, was at the motel when Ann arrived or he arrived shortly thereafter. Norris forced Ann to consume a substantial portion of a pint of whiskey. Lynn and Carl left the premises and in their absence, Norris committed by force two acts of _fellatio_ and a rape upon her person, along with other

sexual intrusions. Ann left the motel at approximately 8:00 p.m., reported to her mother what had happened, who brought her to the police. The charges against Norris resulted.

Medical examination of Ann immediately following the incident revealed she had sustained a blackened eye and a cracked rib.

OTHER CRIMES

Debbie Huck, age 19, testified that in August 1982, she had been called on the telephone by Norris to babysit at his motel. She had been told that he and his wife, Lynn, were going to a movie that night. When she got to the motel, in a taxi arranged by Norris, she found that Lynn was not at home. He started telephoning numbers to try to find Lynn and then started a conversation about Debbie being a model. She testified that through fear of him she partially disrobed and that eventually she was raped. He told her when she left that he would pay her $250. About a week later, she testified, she was called to the telephone by Norris, who told her to come to the motel to pick up the money. When she got there, when Lynn was also present, Norris injected her, again through her fear of him, with two shots of cocaine in her arms, and again raped and otherwise sexually assaulted her.

Other testimony revealed that Norris had been charged with sexual intercourse without consent over the Debbie Huck incidents but that the charges had been reduced upon plea bargain, and he pleaded guilty to the misdemeanor offense of promotion of prostitution.

In accordance with State v. Just (Mont. 1979), 602 P.2d 957, 36 St.Rep. 1649, the State had given notice of its intention to call Debbie Huck as a witness in Norris' case.

The defendant had sought to prohibit the testimony by a motion in limine, which the District Court first granted but during the course of the trial, after hearing Ann's testimony, reversed itself and permitted the testimony.

Norris contends that the admission of Debbie Huck's testimony was improper because it was not permissible under Rule 404(b), M.R.Evid., and that the Huck testimony does not meet the four-factor test of State v. Just, supra, in that the Huck testimony did not describe similar crimes or acts, did not reveal a common scheme or plan and its probative value was clearly outweighed by the prejudice to the defendant. The State answers that the Huck testimony tends to establish Norris' identity, his motive, scheme and modus operandi; that the probative value of Huck's testimony outweighs any prejudice suffered by Norris.

At issue is the applicability of Rule 404(3)(b), M.R.Evid.:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Undeniably there are similarities between the Hanson and the Huck incidents. Hanson was lured by the defendant to babysit; Huck also came as a prospective babysitter. Each of the acts involving the girls took place at a motel. Hanson was forced to drink whiskey during her occurrence; Huck was not involved in alcohol or drugs in the first incident, but was forced to take cocaine injections in the second incident. Norris told Hanson he would give her money if she needed it; he offered to pay Huck $250 for the first incident, and lured her back to the motel a second time on the promise of paying

- 4 -

her the $250. There are dissimilarities, it is true, in the kinds of acts that Norris practiced upon the girls when they had come under his power. Those dissimilarities do not occlude the apparent practice of Norris, with the acquiescence of or at least without objection from Lynn, an admitted prostitute, to lure young women to his motel apartment to ply them with alcohol or drugs and thereby accomplish his unlawful purposes upon them. Clearly in Montana, evidence of other crimes is admissible when proof is shown of similarity, nearness of time, identity, and tendency to establish a common scheme or plan of the crime charged. State v. Just, supra; State v. Jenson (1969), 153 Mont. 233, 455 P.2d 63; State v. Tully (1960), 148 Mont. 166, 418 P.2d 549.

REBUTTAL TESTIMONY

In the State's case on rebuttal, Leonard Lamping was permitted by the District Court to testify that he had been confined in a jail cell in Yellowstone County with Robert Norris when Norris was subjected to the criminal charges concerning Debbie Huck. Here again, the District Court had originally granted Norris' motion in limine as to Lamping, but reversed itself to allow the testimony during State's rebuttal.

Lamping's testimony related to statements of Norris which included descriptions of how Norris' wife would help Norris lure young women into the business of prostitution, descriptions of the use of drugs by Norris during the process of "turning out" prostitutes, and a claim by Norris that he had "disposed" of a young girl who attempted to have Norris prosecuted.

- 5 -

Norris contends that the Lamping testimony was improper rebuttal evidence, that Lamping was a known "snitch," untrustworthy, and testifying for his own gain as a criminal defendant. Moreover, Norris claims that the trial court did not determine whether there were circumstantial guaranties of trustworthiness in Lamping's statements.

During the State's cross-examination of Lynn Norris, in the defendant's case-in-chief, the following occurred:

"Q. So he doesn't make you go out in the street? A. No, he doesn't.

"Q. He's never made you go out and work the street? A. He never made me do nothing.

"Q. Does he make other girls go out and work the streets? A. No.

" . . .

"Q. I'm sure he was. Now when you were told that Bobby raped Annie you've testified that you said, 'You've got to be kidding.' Were you surprised? A. Was I surprised?

"Q. Yeah? A. I didn't believe it.

"Q. Why not? A. Why not?

"Q. Yeah? A. 'Cause I know my husband.' Okay?

"Q. And . . .? A. I don't think he is capable of raping anybody. To put it bluntly."

Following the above testimony, the State moved the court to reverse its ruling on the motion in limine with respect to Lamping. The State wanted to rebut the testimony of Lynn Norris, who had claimed the defendant had never forced anyone to be a prostitute or to make money for him. On that motion, the court allowed the testimony of Lamping.

The testimony from Lynn Norris in her cross-examination by the State in defendant's case-in-chief that her husband had never made her or other women "work the streets" came in without objection. That testimony raised an immediate issue

as to the habitual routine of Norris, and tended to discredit the other testimony in the record that Norris had pleaded guilty to the misdemeanor charge of promotion of prostitution. The State was clearly entitled to rebut through Lamping the testimony of Lynn Norris.

The argument on appeal with respect to Lamping's testimony has taken a curious turn. When Lynn Norris testified that she did not think Norris was "capable of raping anybody. To put it bluntly," defense counsel objected on the ground that he had not made the character of Norris an issue in his case-in-chief. The questions stopped at that point. Norris contends on appeal that the sole purpose of the Lamping testimony was to rebut the statement by Lynn Norris that her husband was incapable of raping anybody. We are uncertain as to whether the statement made by Lynn respecting her husband meant it was not in his character to rape anybody, or whether she meant that he lacked the virility to rape anybody. If the former, of course the question would arise, as Norris contends, as to whether she was improperly led by the State to put Norris' character in issue. If, however, she meant the latter, then of course, her testimony constituted a rebuttable fact.

At any rate, we find no error in the admission of Lamping's testimony. Moreover, the District Court allowed the question of Lampings' credibility to be decided by the jury. Defendant was permitted to call witnesses who establish that Lamping was a known "snitch;" that another person in the county jail was considered to be the person who performed the acts of which Lamping accused Norris; and that Lamping was under indictment at the time he agreed to give

the testimony respecting Norris. The jury had ample opportunity to consider Lamping's credibility.

LIMITED CROSS-EXAMINATION

With respect to Debbie Huck's testimony, Norris contends that the court improperly limited his cross-examination of her. Defense counsel proposed to the court that he wanted to establish that when Debbie returned to Norris' motel apartment, she wanted the $250 for the purpose of getting an abortion, her second, and to establish that the abortion was necessary through her intimacy with a person not the defendant Norris. The District Court, in considering the provisions of section 45-5-503(5), MCA, and Rule 608(b), M.R.Evid., determined that the extension of such cross-examination might turn the trial into one involving Debbie Huck instead of Ann Hanson.

Norris contends that he was not allowed full cross-examination as to Huck engaging in sex in return for money or drugs; that the true reason for her presence at the Norris residence was with respect to the second abortion; and that he was precluded from showing that her appearance at Norris' motel involved no plan, motive, or design similar to the Hanson case.

Section 45-5-503(5), MCA, limits evidence concerning the sexual conduct of the victim. It does not by its terms apply to the sexual conduct of a witness. Rule 608, M.R.Evid., does, however, provide with respect to a witness that "specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, may not be proved by extrinsic evidence."

The District Court permitted Norris to show that Debbie Huck had returned to the motel the second time for the

- 8 -

purpose of obtaining $250, and that she wanted it for an abortion. Further than that, the court limited the cross-examination. In making its ruling, the District Court concluded that the purpose of admitting Debbie Huck's testimony in the first instance was to show a common plan, scheme or design on the part of Norris in luring young women to his motel. Prior to the introduction of Huck's testimony, the court had given the cautionary instruction to which we shall later advert. The District Court therefore ruled that it would limit cross-examination of Debbie by Norris' counsel to matters which would demonstrate Norris did not initiate his contacts with Debbie through a common scheme, design or plan.

We recognize that the District Court is given wide latitude in determining what evidence is admissible during the course of a trial. In this case, the District Court wisely limited the cross-examination to those facts concerning Debbie Huck that would indicate a common plan, scheme or design in the manner in which he committed the offense of Ann Hanson. Norris was seeking to attack the credibility of Huck, not by opinion testimony of her truthfulness, which would be admissible under Rule 608, M.R.Evid., but rather by extrinsic acts which Rule 608 forbids. The District Court was not in error in so ruling.

CAUTIONARY INSTRUCTION

Before allowing the testimony of Debbie Huck, the District Court instructed the jury as follows:

> "Ladies and Gentlemen of the Jury, evidence is about to be introduced for the purpose of showing the defendant committed crimes other than the ones for which he is on trial. You may not consider this evidence to prove that the defendant is a person of bad character, or that he has a disposition to commit crimes. You may only

consider this evidence for the limited purposes of providing a characteristic method, plan or scheme used in the commission of the offense in this case, or the identity of the person who committed the offense. You may also consider this evidence to prove existence of purpose or knowledge, which is an element of the crime charged. You may not consider this evidence for any other purpose that would expose the defendant to unjust double punishment."

The instruction was based on State v. Van Natta (Mont. 1982), 651 P.2d 57, 61, 39 St.Rep. 1771, except that the District Court substituted the words "purpose or knowledge" for the word "intent," found in Van Natta.

Norris objects to the instruction on the ground that it is understandable only by lawyers and not laymen, and that the use of the word "characteristic" in the instruction implies that any method, plan or scheme found by the jury involves the character of the defendant.

We find no substance in the objections raised by Norris and determine that the instruction proposed in Van Natta, as modified by the District Court to substitute "purpose or knowledge" for the word "intent" is a proper one in circumstances where evidence of other crimes is about to be admitted in a criminal case.

CONCLUSION

The judgment of conviction on the counts against Robert Lee Norris are hereby affirmed.

_____
                Justice

We Concur:

_____
        Chief Justice

- 10 -

John Conway Harrison

Daniel J. Shea

L. C. Gulbrandson

Justices