No. 88-175

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ALEXANDER COURVILLE,

Defendant and Appellant.

_____

APPEAL FROM: The District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Benjamin R. Anciaux, Polson, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Betsy Brandborg, Asst. Atty. General, Helena
Larry Nistler, County Attorney; Mark Stermitz, Deputy
County Attorney, Polson, Montana

_____

Submitted: Jan. 12, 1989

Decided: February 27, 1989

_____

Clerk

FILED
'89 FEB 27 PM 1 23
ED S... CLERK
MONTANA SUPREME COURT
Filed:

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Alexander Courville was convicted of aggravated burglary and sexual intercourse without consent in the Twentieth Judicial District, Lake County. Courville appeals the conviction of aggravated burglary.

The issues on appeal are stated as follows:

1. Whether the trial court erred by not directing a verdict in favor of defendant on the aggravated burglary charge; and

2. Whether the trial court erred by not allowing defendant to introduce evidence at trial of the victim's past crimes, wrongs and other acts?

We affirm.

T. B. was awakened in the upstairs bedroom of her home at about 4:00 a.m. on the morning of August 22, 1987, by a noise downstairs. She went downstairs in her nightgown and found Courville in her house, sitting on her couch with his shoes off. T. B. recognized Courville immediately because he had been an acquaintance of the family for many years.

T. B. noticed that Courville was obviously upset and appeared to have been drinking. He pleaded with T. B. to stay and talk to him because he was upset. T. B. explained to him that she was sick, she had been at the hospital earlier to get a shot of Demerol for her severe migraine headache, she was tired from the drug and needed to go back to bed. The trial testimony conflicted at this point as to whether or not T. B. actually told Courville to get out of the house. However, Courville stood up and began walking. T. B. assumed he was walking toward the door to leave, and she went upstairs, returning to bed.

T. B. was awakened again in a short time by Courville sitting on her bed and shaking her awake. Her two-year-old

2

son was in bed with her. The testimony again conflicted at this point as to where Courville was and what dialogue passed between them. T. B. gave slightly different accounts of this. She appeared confused at trial, and her memory was not strong due to the ensuing events, her drowsiness, and the effect of the drug.

However, T. B. testified that she turned her back to Courville and dozed off again. She was awakened the next time by Courville choking her and yelling at her. He choked her several times and demanded that she strip so that he could have sex with her. She refused and was choked again. She testified that under fear for her life, she undressed. She persuaded him not to have intercourse with her, but while she was naked Courville fondled her entire body and put his fingers in her vagina and rectum.

T. B. attempted to leave the bedroom for varying excuses, but Courville followed her through the house and twice took her back to the bedroom to repeat this process. Finally, at about 7:00 a.m. T. B. was able to get out of the house with her son and another child she was babysitting, under the excuse of needing to take the other child home to her mother and needing to get on the road for a trip they had planned to Glacier Park.

T. B. went straight to Vanessa Jones's house, the mother of the child she was babysitting. Vanessa testified that T. B. appeared on her doorstep about 7:00 a.m. with the kids and was shaking and totally upset. Her throat, chest and arms were covered with bruises. T. B. related the entire story to Vanessa, who also knew Courville. Vanessa persuaded T. B. to get some sleep at Vanessa's house and encouraged her to turn Courville in to the police.

Five days later, Vanessa went to the Polson Police Department with this story and gave a statement to the

3

police. The next day, T. B. came in herself and related the story. T. B. was still quite bruised and her injuries were photographed by the investigating officer. However, T. B.'s version of the events varied slightly at trial from the story she related to the police that day.

Originally, T. B. gave a statement that she told Courville several times to go home and get out of the house and the next thing she remembered was waking up to him choking her. At trial, she could not remember specifically telling him to leave, but rather just understood that he was leaving when she told him she was sick and he got up and walked toward the door. Additionally, T. B. later remembered some intervening events in her bedroom between her falling asleep the first time and when Courville first began choking her.

However, she testified unequivocally that she did not invite him into the house, nor the bedroom, she did not encourage him, she did not want to have sex with him and she did not consent to his acts. All accounts of the story reveal the fact that Courville threatened her: "If you don't do it, I'll kill you," and "Vanessa will find you dead here tomorrow" and "you keep your mouth shut about this or I'll come back and hurt you again."

Courville was charged by information on September 11, 1987, with sexual intercourse without consent and aggravated burglary. Prior to trial, the State made motions in limine to exclude evidence of T. B.'s sexual conduct and history of her criminal record. Both motions were unopposed by defense counsel and were granted by the judge. The jury returned a verdict of guilty on both counts in February 1988, and Courville was sentenced to twenty years with none suspended for Count I, sexual intercourse without consent, and twenty years with ten suspended on Count II, burglary, with an

4

additional ten years for aggravated burglary, all to run consecutively. Courville does not appeal his conviction on Count I.

Courville appeals the trial court ruling that T. B.'s character had not been put in issue by her own inconsistent statements, thus prohibiting his use of "other bad acts" evidence against her, and denying his motion for a directed verdict on the burglary charge.

## I.

Character evidence is generally inadmissible. Rule 404(a), M.R.Evid. However, Rule 608, M.R.Evid., does permit character evidence under specific circumstances: when the witness's character for truthfulness has been put in issue and then only if the offered evidence goes to the witness's veracity. But specific instances of misconduct of a witness for the purpose of attacking the witness's credibility may not be proved by extrinsic evidence. Rule 608(b). Rule 609 specifically prohibits admission of evidence that a witness has been convicted of a crime for purposes of attacking the credibility of the witness. See for discussion, State v. Sloan (Mont. 1989), ____ P.2d ____, 46 St.Rep. 214, 216.

In this case, the defendant argued that the victim's inconsistencies in some of the details of her story put her character at issue. He thus wanted to prove she was untruthful with testimony, some from other witnesses, that she had been accused of stealing money from Vanessa at one time and that T. B. herself had a criminal record. However, counsel's efforts were misguided on this issue. This testimony is not probative of truthfulness, and T. B.'s character was not put at issue. The judge properly ruled that the door was not open to this sort of testimony.

5

We decline to rule that an inconsistent statement in a victim's account of the sexual assault on her automatically puts her character in issue, thus opening the door for evidence of any past misconduct. The ruling of the trial court to that effect was not an abuse of discretion. In State v. Maxwell (1982), 198 Mont. 498, 647 P.2d 348, we held that inconsistencies in a victim's statements regarding sexual intercourse without consent do not necessarily render her testimony inherently incredible. The jury is to remain the fact finder and the proper body to weigh the credibility of each witness:

> Only in those rare cases where the story told is so inherently improbable or is so nullified by material self-contradictions that no fair-minded person could believe it may we say that no firm foundation exists for the verdict based upon it.

Maxwell, 647 P.2d at 351.

Under these circumstances, defense counsel is not allowed to attack the victim's character in general, but rather is allowed to impeach the witness' testimony based on her prior inconsistent statements. Counsel impeached in this case and the jury was left to weigh her credibility in light of all disputed details.

The jury always has an easy remedy for incredible testimony: they are free to reject it. Obviously, in this case, the jury did not reject T. B.'s testimony. Rather, the jury concluded that T. B. was worthy of belief despite her inconsistencies.

Rulings on evidence are left to the sound discretion of the trial judge and will not be overturned on appeal absent a showing that the trial judge abused his discretion. Cooper v. Roston (Mont. 1988), 756 P.2d 1125, 45 St.Rep. 978.

6

Courville has not made that showing. We affirm the lower court's denial of "other bad acts" testimony.

II.

Courville also contends that the State's case-in-chief was deficient on the elements of burglary and, thus, it was an abuse of discretion for the trial court not to direct a verdict in favor of Courville on that count. We disagree.

Section 45-6-204, MCA, defines burglary as follows:

> (1) A person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein.
> * * *
> Burglary is aggravated if the perpetrator inflicts bodily injury to any person during his entry, crime or flight thereafter.

"Enters or remains unlawfully" is defined in § 45-6-210, MCA, which reads in pertinent part: "A person enters or remains unlawfully . . . when he is not licensed, invited or otherwise privileged to do so."

This statute is worded in the disjunctive; thus evidence that Courville either entered or remained unlawfully with an intent to commit an offense therein warrants denial of his motion. The testimony at trial conflicted as to whether or not T. B. locked her door that night. However, it is clear that Courville entered her house without permission to do so. His unlawful entry coupled with his further felony conduct satisfied the State's burden of proving every element of the burglary charge.

A verdict of acquittal may be directed in favor of the defendant only if no evidence exists upon which to base a guilty verdict. See State v. Matson (Mont. 1987), 736 P.2d

971, 44 St.Rep. 874; State v. Whitewater (Mont. 1981), 634 P.2d 636, 38 St.Rep. 1664; and §46-16-403, MCA. The foregoing testimony of T. B. regarding Courville's entry was sufficient for the case to go to the jury. Courville's motion was properly denied.

Courville further argued that even if he actually entered unlawfully, he was invited to remain on the premises, thus negating any criminal conduct. Trial testimony conflicted as to whether T. B. invited Courville to sleep downstairs on her couch that night because he was obviously upset and needed a place to stay. T. B. testified that she did not mind if he stayed on her couch but did not specifically remember inviting him. Even had the jury found that T. B. may have invited Courville to sleep downstairs on her couch, that invitation certainly did not include going up to her bedroom in order to choke and sexually assault her. Such conduct exceeds any reasonable privilege and the trial court properly let the burglary charge go to the jury for determination. See also State v. Manthie (1982), 197 Mont. 56, 641 P.2d 491; State v. Watkins (1974), 163 Mont. 491, 518 P.2d 259 ("when a person exceeds the limits of his privilege . . . he thereby transforms his original invited presence into a trespass that can form the basis of a burglary charge.")

Based on the foregoing evidence, Courville fails to convince this Court that the trial court committed error.

Judgment affirmed.

_J. A. Turnage_
Chief Justice

8

We concur:

_John Conway Harrison_

_R. C. McDaugh_

_John L. Sheehy_

_____
Justices