No. 94-225

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MATTER OF DANIEL L. MAGONE,
SHERIFF, MISSOULA COUNTY, STATE OF MONTANA,

      Petitioner and Respondent,

  -vs-

DANIEL RICHARD FROEHLICH,

      Respondent,

   and

LaDONNA FROEHLICH,

      Respondent

FILED

MAR 30 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Anne Hamilton, ASUM Legal Services, Missoula,
Montana

          Margaret Borg, Public Defender's Office,
Missoula, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
Elizabeth L. Griffing, Ass't Attorney General
Helena, Montana

          Robert L. Deschamps, III, Missoula County Attorney,
Karen S. Townsend, Deputy County Attorney,
Missoula, Montana

Submitted on Briefs: January 12, 1995

Decided: March 30, 1995

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

LaDonna Froehlich (LaDonna) appeals from the findings of fact, conclusions of law and order of the Fourth Judicial District Court, Missoula County, denying her motion to vacate an order forfeiting three rifles and one shotgun. We reverse, concluding that LaDonna did not receive the service of summons and petition for forfeiture to which she was entitled under § 44-12-201(1), MCA, and that neither actual notice of the forfeiture hearing nor subsequent intervention cured the lack of required service.

We restate the issues on appeal as follows:

1. Was LaDonna entitled to service of summons and petition for forfeiture as provided in § 44-12-201, MCA, as a known owner or claimant of the property for which forfeiture was sought?

2. Did any actual notice by LaDonna of the September 10, 1993, forfeiture hearing relieve the necessity of compliance with § 44-12-201(1), MCA?

3. Was the State's failure to provide the statutorily required notice remediable by the District Court allowing LaDonna to intervene after the original order of forfeiture was entered?

The underpinnings of this appeal began with a 1990 law enforcement investigation of Daniel Froehlich (Daniel), LaDonna's estranged husband. The investigation culminated in December 1990, with an undercover purchase of LSD in Daniel's home. After arresting Daniel, the Missoula City Police, Missoula County Sheriff and Montana Criminal Investigation Bureau searched his residence and seized property. LaDonna claims to have been present at the time of the search and seizure. The four guns at issue in this

2

case were among the property seized.

The Missoula County Sheriff, represented by Deputy County Attorney Karen Townsend (Townsend), filed a petition seeking forfeiture of the guns and other seized property on December 31, 1990. Daniel was served with summons and a copy of the petition as required by § 44-12-201, MCA. In his answer, Daniel claimed that he and LaDonna had purchased the guns for hunting and paid for them with his employment wages. The forfeiture hearing regarding the guns ultimately was scheduled for September 10, 1993.

Prior to the September 10, 1993 hearing, Daniel telephoned LaDonna and told her that he was being transferred to the Missoula County Courthouse for a hearing he believed was related to forfeiture of the guns. LaDonna then left a handwritten note with Townsend--who had represented the State of Montana (State) in other proceedings against Daniel--at the County Attorney's office. In LaDonna's note, she asserted ownership of the guns and expressed interest in the forfeiture proceeding she thought might be occurring that day. She also included information about where she could be reached throughout the day.

Townsend represented the State at the September 10, 1993, forfeiture hearing regarding the guns. She had read LaDonna's note and showed it to Daniel's counsel before the hearing began; neither counsel notified the court of the note or its contents. Three law enforcement officers testified in support of the petition's claim that the guns were used to protect or facilitate Daniel's drug distribution operation. Daniel testified that he and LaDonna had

purchased the guns "for our children . . to hunt and shoot them [sic] . . ." Following the hearing, the District Court ordered the guns forfeited.

LaDonna obtained counsel after learning that the guns had been ordered forfeited. She moved to intervene in the forfeiture proceedings, for a temporary restraining order to prevent final disposition of the property and to have the forfeiture order vacated. Among other things, LaDonna asserted that:

> All owners or claimants of seized property are to be notified of any forfeiture hearings. Montana Code Annotated § 44-12-201. Missoula County had notice that LaDonna Froehlich claimed an interest in said property. LaDonna Froehlich received no notice regarding the hearing of forfeiture.

On December 1, 1993, the District Court held a hearing on LaDonna's motions. The court took the motion to intervene under advisement and received testimony from LaDonna. LaDonna stated that she first informed law enforcement authorities that she owned the guns during their search of Daniel's home in December 1990. She stated that the authorities again became aware of her claimed ownership interest in the guns through various other events, culminating in her September 10, 1993, note to Townsend. No testimony or evidence was offered in response. Townsend and Daniel's public defender verified that they had read, but failed to advise the court of, LaDonna's note prior to the September 10, 1993, forfeiture hearing.

Following the hearing on LaDonna's motions, the District Court entered its findings of fact, conclusions of law and order granting LaDonna's motion to intervene and denying her motion to vacate.

4

The court again ordered the guns forfeited.  LaDonna appeals.

> 1.  Was  LaDonna  entitled to  service of  summons  and
> petition  for  forfeiture  as  provided  in  § 44-12-201(1),
> MCA,  as  a  known  owner  or  claimant  of  the  property  for
> which  forfeiture  was  sought?

The  District  Court  concluded  that  LaDonna  did  not  present  a claim  to  the  guns  as  required  by  statute  until  after  completion  of the  forfeiture  proceeding.   In  Montana,  the  forfeiture  of  property related  to  drug  offenses  is  authorized  and  governed  by  Title  44, Chapter  12,  MCA.   Within  45  days  following  the  seizure  of  such property,  a  petition  to  institute  forfeiture  proceedings  must  be filed;  summons  and  a  copy  of  the  petition  must  be  served  on  all owners  or  claimants  of  the  property.   Section  44-12-201,  MCA. Personal  service  is  required  when  the  name  and  address  of  the  owner or  claimant  is  known.   Section  44-12-201(1),  MCA.

At  the  outset,  we  observe  that  the  District  Court's  conclusion that  LaDonna  did  not  present  a  claim  to  the  guns  as  required  by statute  is  susceptible  of  two  interpretations.   The  conclusion could  be  read  as  a  determination  that  the  forfeiture  statutes require  an  owner  or  claimant  to  affirmatively  present  a  claimed interest  in  the  property  via  bills  of  sale  or  title  documents  prior to  the  point  at  which  obligations  regarding  service  of  summons  are imposed  on  the  State.   Alternatively,  the  conclusion  could  be interpreted  as  a  determination  that  LaDonna  was  not  a  known  owner or  claimant  at  any  time  prior  to  the  forfeiture  hearing.

Because  nothing  in  the  forfeiture  statutes  corresponds  to  the first  interpretation,  that  an  owner  or  claimant  has  an  affirmative

5

duty **to** "present **a claim**" we read the District Court's conclusion as determining that LaDonna was not a known **owner or claimant at** any time prior to the September forfeiture hearing and, therefore, that she was not entitled to service as required by § 44-12-201, MCA. We review a district court's conclusions of law regarding the application of a statute to determine whether the court's interpretation of the law is correct. State v. Henning (1993), 258 Mont. 488, 490-91, 853 P.2d 1223, 1225; citing Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

LaDonna argues that the District Court erred in concluding that she was not a known claimant. She contends that the State knew, or should have known, of her claimed interest in the guns as early as the search of Daniel's property in December of 1990 and at various times thereafter, including the day of the forfeiture hearing when she left her note for Townsend. On that basis, LaDonna contends she was entitled to service of summons and the petition pursuant to § 40-12-201, MCA.

The State acknowledges that we have mandated strict compliance with the procedural requirements of Montana's forfeiture statutes. See State v. 1978 LTD II (1983), 216 Mont. 401, 404-05, 701 P.2d 1367-68. Rigid adherence to the statutory safeguards is necessary because of the extraordinary nature of the forfeiture statutes in permitting seizure of private property prior to a factfinding hearing. LTD II, 701 P.2d at 1367. It is the summons which informs an owner or claimant of the necessity of answering the petition within 20 days as required by § 44-12-202, MCA; an owner's

6

or claimant's failure to answer timely ordinarily bars him or her from presenting evidence at the forfeiture hearing.  See § 44-12-202, MCA.

The State also admits that it did not serve LaDonna with notice of the forfeiture proceedings pursuant to § 40-12-201, MCA. The State argues, however, that neither the statutory service requirements nor LTD II is applicable here because, as the District Court determined, LaDonna was not a known claimant prior to the September 10, 1993, forfeiture hearing.

LaDonna claims to have notified the State of her ownership interest in the guns when they were seized during the search of Daniel's home in December, 1990.  She also claims the State was made aware of her interest through Daniel's answer to the forfeiture petition, through testimony at a 1991 forfeiture hearing regarding other seized property and as a result of the note she left for Townsend on September 10, 1993.  The State vigorously disputes having any knowledge of LaDonna's claimed interest in the guns prior to her September note to Townsend.

The term "known owner or claimant" is not defined in § 44-12-201, MCA.  In construing the meaning of a statute, we presume the terms and words used were intended to be understood in their ordinary sense.  Gaustad v. City of Columbus (1994), 265 Mont. 379, 381, 877 P.2d 470, 471 (citation omitted). A common definition for the term "owner" is "one who has dominion over a thing, real or personal. . , which he has a right to enjoy and do with as he pleases."  Black's Law Dictionary, page 1105, (6th Ed. 1990). A

7

"claimant" is one who asserts a right, demand or claim. Black's Law Dictionary, page 247, (6th Ed. 1990).

Adding these everyday meanings to the statutory service requirements, we conclude that the District court erred in determining that LaDonna was not a known claimant at any time prior to the forfeiture hearing on September 10, 1993. In so concluding, we need not address each point in time at which LaDonna contends her claim was known to the State; nor is it necessary to ascertain a precise point in time during the early stages of this forfeiture proceeding at which the State had the requisite knowledge of LaDonna's claim regarding the guns. Our discussion is limited to the events of December 18, 1990, and September 10, 1993.

LaDonna testified that the State was first aware of her claim to the guns via a conversation between herself and Detective Harbison during the search of Daniel's residence and seizure of the guns and other property on December 18, 1990. According to LaDonna, she told Detective Harbison at that time that she had purchased the guns, that they were legally hers, and that she had bills of sale for them.

No testimony or other evidence was presented to controvert LaDonna's statements. The State contends that the District Court, having found other portions of LaDonna's testimony incredible, also was free to reject this testimony that the conversation occurred.

Indeed, it appears that the District Court necessarily, although impliedly, rejected LaDonna's testimony in this regard; only by doing so could the court have concluded that she was not a

known claimant. The court certainly is free to weigh credibility and evidence and we will not substitute our judgment for that of the trial court. Hagen v. Dow Chemical Co. (1993), 261 Mont. 487, 494, 863 P.2d 413, 418. For that reason, we do not conclude that LaDonna was a known claimant by virtue of the alleged December 18, 1990, conversation.

The State's other contention regarding LaDonna's testimony in this regard is, however, troubling. The State argues that, even if the conversation took place, it does not support LaDonna's position that she was entitled to notice of the forfeiture proceedings. This is so, argues the State, because the conversation "was clearly held in passing" and related more to the question of whether the guns were stolen than to the identity of the actual owner. We cannot approve of the State's cavalier attitude about what constitutes notice of a claimed interest in property for which forfeiture is sought. If the conversation occurred, it would constitute a claim of interest in the guns by LaDonna because LaDonna asserted a right to the guns. Accepting the State's position that it was merely a conversation "in passing" which would not support a claimed interest would impermissibly shift the initial burden under the forfeiture statutes to those claiming interest, rather than strictly requiring the State to serve known claimants. We will not countenance such a result where ex parte seizures of private property are at issue. See LTD II, 701 P.2d at 1367-68.

Unlike the events of December 18, 1990, the events of

9

September 10, 1993, regarding LaDonna's note to Townsend are not vigorously disputed. Townsend represented to the court that LaDonna left the following note for her before the forfeiture hearing on the guns:

> LaDonna  Froehlich
> 1302  Phillips
>
> 9/10/93
>
> Karen  Townsend,
>
> This note is in reference to Daniel R. Froehlich. He was transported from MSP for a hearing today. I do not know what its [sic] about. I would like you to have this information in case the hearing was for a forfeiture of firearms seized Dec. 18, 1990 at Daniel's home.
>
> At the time Daniel was in possession of the firearms to hunt with. The guns are in reality of my ownership [sic]. I have receipts for the guns and I also know that these guns were not illegal, as in stolen.
>
> The guns were purchased originally for my children, when they were old enough to go hunting. I only allowed Daniel to use them as he did not own any guns.
>
> I don't want to talk to Dan or see him as I'm trying to get a divorce from him. If you have any questions of me 1'll be at school, U of M, until 5pm [sic] and then I'll be at Tower Pizza, 543-6112, where I'll be working.
>
> If the case today was not in reference to this, then I'll need no information.
>
> Thanks for your time,
> LaDonna  Froehlich

The State concedes that Townsend received and read the note prior to the September 10 forfeiture hearing. In addition, LaDonna's testimony that she turned the bills of sale over to someone at the County Attorney's office who returned them to her was undisputed.

Considered in relation to the common definition of "owner" and

"claimant," the words "the guns are in reality of my ownership" clearly convey a claim to the guns. The State's only argument relating to the note is that, taking the note and LaDonna's later testimony about the note together, LaDonna's story is "contradictory, confusing and incredible." The flaw in the argument, however, is that it is the note itself that gave the State notice that LaDonna was a known claimant; nothing in the note is contradictory, confusing or incredible. The State may not "undo" clear notice provided at a specific point in time by relying on testimony given three months later. We conclude that at least as of the day of the forfeiture hearing, but before the hearing began, LaDonna was a known owner or claimant of the property.

Having concluded that LaDonna was a known claimant, we come full circle to our LTD II holding mandating strict compliance with the procedural requirements of the forfeiture statutes. Section 44-12-201, MCA, required the State to serve LaDonna with summons and a copy of the petition before proceeding with the forfeiture of the guns. If the owner or claimant's name and address are known, personal service is required. Section 44-12-201(1), MCA. LaDonna's note articulated her full name, address, work location and telephone number; thus, her name and address were known. We conclude, therefore, that § 44-12-201(1), MCA, required the State to serve LaDonna personally prior to the forfeiture hearing.

 2. Did any actual notice by LaDonna of the September 10, 1993, forfeiture hearing relieve the necessity of compliance with § 44-12-201(1), MCA?

11

The District Court found that, while LaDonna was not served or given formal notice of the forfeiture proceeding, she had actual knowledge of the September 10, 1993 forfeiture hearing. LaDonna argues that this finding is erroneous both factually and legally. For purposes of analysis, we accept the court's finding that LaDonna had actual notice of the hearing and address the legal question of whether actual notice cured the failure to serve her personally as required by § 44-12-201(1), MCA.

As discussed above, the legislature has expressly provided for notice via personal service of process on known claimants to property for which forfeiture is sought. Section 44-12-201(1), MCA. The language of the statute--that owners and claimants of the property "shall" be served--is mandatory. See Gaustad, 877 P.2d at 471; LTD II, 701 P.2d at 1367. Nothing in the forfeiture statutes provides for alternative or substitute notice. We may not insert into statutory enactments provisions omitted therefrom. Section 1-2-101, MCA.

Moreover, our LTD II mandate of strict compliance and rigid adherence to the procedural safeguards contained in forfeiture statutes is even more compelling in the case presently before us than it was in LTD II. There, the statutorily required notice was given, but was defective in that it did not advise the person served that an answer was required within 20 days. We refused to allow the State to cure the defect by amending the notice of intention to institute forfeiture and, in effect, recommencing the forfeiture proceeding. LTD II, 701 P.2d at 1368.

12

Here, LaDonna received no notice at all pursuant to § 44-12-201, MCA. As a result, she--like the respondent in LTD II--was never advised of the necessity of filing a timely answer under § 44-12-202, MCA, in order to protect her claimed interest in the guns. Even with actual notice of the hearing, § 44-12-202, MCA, likely would have precluded her from presenting evidence or asserting her interest at the September 10, 1993, forfeiture hearing because she had not **timely** filed an answer to the petition for forfeiture. As we stated in LTD II, "[t]he interests of the possibly innocent owner should likewise be protected by strict compliance with the procedural mandate of the statute." LTD II, 701 P.2d at 1368 (citation omitted).

We will not stand idly by and allow known, and possibly innocent, owners or claimants to have their property forfeited for failure to serve a summons and copy of the petition as expressly required by § 44-12-201, MCA. We conclude, therefore, that actual notice of a forfeiture hearing by a known claimant or owner does not relieve the necessity of compliance with § 44-12-201, MCA.

**3.** Was the State's failure to provide the statutorily required notice remediable by the District Court allowing LaDonna to intervene after the original order of forfeiture was entered?

As a final matter, we consider whether the District Court's granting of LaDonna's motion to intervene remedies the State's failure to strictly comply with the requirements of § 44-12-201(1), MCA. LaDonna contends that the State's failure to serve her was a "fatal flaw" requiring dismissal of the forfeiture proceeding. The

**13**

State argues that the opportunity to testify at the intervention hearing provided her with an adequate mechanism to challenge the forfeiture and assert her rights. By way of background, we note that the guns were seized on December 18, 1990, the forfeiture hearing was not held until September 10, 1993, and the original order of forfeiture was entered November 2, 1993. LaDonna's intervention motion was granted on January 25, 1994. By that time, the guns had been in the State's possession for more than three years. The State argues that the intervention provided sufficient protection of LaDonna's interests. We disagree.

Forfeiture statutes are extraordinary measures. "The very exercise of the seizure and forfeiture statutes by the State is a serious infringement on the rights of the party whose property is seized without a hearing." LTD II, 701 P.2d at 1368. The only justification for allowing such a procedure at all is because "it is considered a significant weapon in the battle against drug trafficking." LTD II, 701 P.2d at 1368.

Where the mere initiation of forfeiture proceedings is a serious infringement on the property owner's rights, the extent of the infringement on LaDonna's rights which occurred here simply by virtue of the length of time the State had control over the seized property in which she claimed an interest can hardly be quantified. In LTD II, where the time periods were relatively short, we refused to allow the State to cure its defective notice; such a cure would have increased the delay in proceeding against the property at the price of prejudicing the owner's rights. LTD II, 701 P.2d at 1368.

14

Instead, we affirmed the district court's dismissal of the forfeiture proceeding where a possibly innocent owner's rights were prejudiced by the State's failure to comply with mandatory statutory requirements. The same result is even more compelling here, given the total absence of notice and the inordinate length of time during which the State had control of the guns.

In addition, it is clear that the forfeiture procedure imposes stringent limitations on the party whose property is seized, including a rebuttable presumption of forfeiture and the limited proof allowed to rebut the presumption. Sections 44-12-203 and 44-12-204, MCA. Adopting the State's position would maintain those stringent limitations on property owners or claimants while, at the same time, excusing the necessity of its own strict compliance with the service requirements contained in § 44-12-201, MCA. We rejected such a one-sided interpretation of the forfeiture statutes in LTD II, indicating that the requirements placed on property owners or claimants "must be enforced so as to avoid, to the greatest extent possible, prejudicing the rights of the party against whom they are directed." LTD II, 701 P.2d at 1368. Enforcing the requirements of the forfeiture statutes when they may adversely impact owners or claimants while simultaneously not enforcing those statutes when they may adversely impact the State-- as the State would have us do--would not in any way meet our obligation to enforce the statutory requirements so as to avoid prejudicing the rights of property owners or claimants.

Allowing an intervention subsequent to a court-ordered

15

forfeiture of property to replace strict compliance by the State with the requirements of § 44-12-201, MCA, would essentially gut the statute, encourage the State to "not know" of a clearly asserted claim to the property and, as a result, significantly prejudice the claimant's rights by shifting the entirety of the burden to the claimant. The extent of the prejudice would far exceed the prejudice to the rights of a possibly innocent owner that we refused to countenance in LTD II. Nor are we persuaded by the State's arguments that we should depart from the LTD II remedy here. The State argues that the District Court's approach in allowing LaDonna to intervene was reasonable and procedurally sound. We do not disagree that the court did what it could to protect LaDonna's interests given the position in which it was placed by the State's failure to properly serve LaDonna as required by § 44-12-201, MCA. We conclude, however, that the State's failure to provide the statutorily-mandated notice was not remediable by the District Court allowing LaDonna to intervene after it had ordered the forfeiture of the guns.

Reversed and remanded with instructions to vacate the order of forfeiture and dismiss the forfeiture proceedings involving the guns.

_____
Justice

We concur.

_____
Chief Justice

16

William B. Hunter

W. William Leaphart

Justices