No. 94-588

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FILED

OCT 24 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

IN THE MATTER OF THE SEIZURE OF
$23,691.00 IN UNITED STATES
CURRENCY

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Karl P. Seel, Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General, Cregg
Coughlin, Assistant Attorney General, Helena,
Montana; Mike Salvagni, Gallatin County Attorney,
Marty Lambert, Deputy Gallatin County Attorney,
Bozeman, Montana; Marcelle Quist, Bozeman, Montana

Submitted on Briefs: August 3, 1995

Decided: October 24, 1995

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Petitioner Robert Burns of the West Yellowstone Police Department initiated this suit in the District Court of the Eighteenth Judicial District, Gallatin County, for the forfeiture of $23,691 seized from a 1991 Ford Explorer on November 15, 1991. The District Court entered judgment in favor of the Petitioner for $1,980, and ordered Claimant Stacy Vanderburg (Vanderburg) to forfeit $22,980 to the Drug Forfeiture Fund of the West Yellowstone Police Department. The District Court entered judgment in favor of Claimant Donna Nelson (Nelson), allowing her to keep $711. Vanderburg appeals the judgment ordering the forfeiture. We affirm.

## ISSUES

We address the following issues on appeal:

1. Did the District Court err in admitting Nelson's videotaped deposition?

2. Did the District Court err in failing to make particular findings of fact?

3. Did the District Court err by failing to base its findings of fact and conclusions of law on substantial credible evidence?

## BACKGROUND

On the night of November 10, 1992, Vanderburg, accompanied by Nelson, rented room 112 at the Brandin' Iron Motel in West Yellowstone, Montana. On the morning of November 11, 1991, a maid at the motel notified the West Yellowstone Police Department that she found a black suitcase containing a pound of marijuana in room 112. On the same morning, after discovering that they had left the

2

suitcase in the room, Vanderburg and Nelson returned to the motel and asked the manager for the suitcase. The manager informed Nelson that the police had possession of the suitcase. Vanderburg and Nelson drove off.

The West Yellowstone Police stopped Vanderburg and Nelson about six miles north of West Yellowstone and Vanderburg gave them permission to search the vehicle. However, before searching the vehicle, the police obtained a search warrant. The police found $21,000 of United States currency, a loaded handgun, and a bag of rubberbands in Vanderburg's briefcase. In Nelson's purse they found $1,000 and $980 in bundles of United States Currency. In Nelson's wallet they found $711 and Zig Zag cigarette papers. They also found a digital electronic scale and the receipt to room 112 at the Brandin' Iron Motel in the back of the vehicle.

The West Yellowstone Police arrested Vanderburg and Nelson on charges of criminal possession of dangerous drugs with intent to sell. While Vanderburg and Nelson were incarcerated, Officer Burns overheard Vanderburg telling Nelson that they would be in trouble when the police found the scale and that the police would keep the money they found in the car because a financial background check would show that neither Vanderburg nor Nelson would normally have such a large amount of money.

After a jury trial, Nelson was convicted of possession of dangerous drugs with intent to sell. Charges against Vanderburg were dismissed after a mistrial and in his case, double jeopardy prevented a new trial.

The West Yellowstone Police Department then filed a petition for forfeiture of the $23,691 seized from Vanderburg's vehicle pursuant to § 44-12-102(1)(g), MCA, which subjects to forfeiture proceeds traceable to an exchange of dangerous drugs or proceeds used or intended to be used to facilitate a violation of Title 45, chapter 9, MCA. Vanderburg claims $21,000 of the money taken from his briefcase which was seized from the vehicle. Nelson claims $711 taken from her wallet which was seized from the vehicle. Neither Vanderburg nor Nelson claim the $1,980 taken from Nelson's cosmetic bag.

Vanderburg's and Nelson's statements regarding the money conflicted. Nelson claimed that Vanderburg went to West Yellowstone to sell marijuana. She further claimed that Vanderburg transported the marijuana in five-gallon plastic buckets and that she saw two men leaving room 112 carrying the five-gallon buckets. Nelson also stated that after they left the motel and before they were pulled over, Vanderburg took money out of his briefcase and gave it to her. In contrast, Vanderburg claimed that Nelson went to West Yellowstone to sell drugs. He also claimed that he borrowed the $21,000 in cash from his mother, Judy Cornell, and from a family friend, Eleanor Clark, for his school tuition. He took the cash with him for safe keeping and took the handgun to "fend off some robbers or something." He claimed that he did not know of the scale or marijuana before the trial.

At Nelson's deposition, her attorney instructed her not to answer a number of questions. Although the parties did not request

4

a transcript, the State's brief included excerpts from Vanderburg's attorney's line of questions:

> Were you aware that there was a warrant for your arrest for contempt of court?;
> Have you been found in contempt of court for failing to successfully complete counseling for DUI? . . . My question was whether you were aware of it?;
> Were you, or had you been arrested and found guilty of possession of marijuana in the State of Washington?;
> On previous occasion[sic] . . . Did you sell marijuana?;
> Did you, were you in fact known to be a dealer of drugs in Spokane, Washington?;
> Are you aware of the fact that you have been accused in other court proceedings of being a drug dealer?;
> Isn't it true . . . that your neighbors have filed affidavits in which they were, say that you sold drugs out of your home?

Nelson's counsel instructed her not to answer these questions and to assert her Fifth Amendment right against self-incrimination. The State's attorney objected to the line of questions as violating Rules 608 and 609, M.R.Evid. Vanderburg then moved to exclude the deposition entirely. At the bench trial, the District Court allowed Nelson's videotaped deposition over Vanderburg's objections.

The District Court found Vanderburg's, Judy Cornell's, and Eleanor Clark's testimony not credible. Because the West Yellowstone Police introduced no evidence that the $711 found in Nelson's wallet was used to facilitate the sale of marijuana, the District Court found that the money was not proceeds of a drug transaction and ordered it released to Nelson pursuant to § 44-12-205(1), MCA.

The District Court concluded that Vanderburg failed to rebut the presumption of forfeiture by a preponderance of the evidence

5

and ordered judgment in favor of the West Yellowstone Police Department in the sum of $21,000, which does not include the $1,980 that neither Vanderburg nor Nelson claimed. The District Court entered judgment in favor of Nelson for the $711. Vanderburg appeals the judgment granting the forfeiture of $22,980 to the West Yellowstone Police Department and releasing $711 to Nelson.

## DISCUSSION

1. Did the District Court err in admitting Nelson's videotaped deposition?

The standard of review for evidentiary rulings is whether the district court abused its discretion. State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380 (citing State v. Crist (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054). The District Court has broad discretion to determine if evidence is admissible. Accordingly, absent an abuse of discretion, we will not overturn the district court's determination. Passama, 863 P.2d at 380.

Citing to no other authority than evidentiary privileges which Vanderburg admits do not apply, Vanderburg claims that the District Court erred when it admitted Nelson's videotaped deposition. Vanderburg supports his claim by stating that Nelson waived her Fifth Amendment privilege against self-incrimination, could not assert her privilege against self-incrimination after being convicted of possession of dangerous drugs, and could not assert her privilege against self-incrimination in a civil proceeding. Vanderburg fails to explain why the District Court should have excluded Nelson's entire deposition when she asserted her Fifth Amendment right against self-incrimination only as to certain

6

questions asked and he cites no authority for that proposition.

The State argues that not only did Nelson correctly assert her Fifth Amendment privilege against self-incrimination but also that the District Court did not abuse its discretion in denying Vanderburg's motion to exclude Nelson's testimony. The State asserts that had Vanderburg wanted Nelson's testimony, he could have moved to compel Nelson to answer the disputed questions rather than move to exclude the entire deposition.

The State correctly argues that the Fifth Amendment's protection "covers not only criminal proceedings but also other proceedings where compelled testimony could lead to future prosecution." Matter of C.L.R. (1984), 211 Mont. 381, 386, 685 P.2d 926, 929 (citing Lefkowitz v. Turley (1973), 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274). Thus, Nelson's conviction in a prior criminal proceeding and the fact that the instant case is a civil proceeding have no bearing on Nelson's ability to assert her Fifth amendment right against self-incrimination. Nelson had the right not to answer questions where the answers could lead to future prosecution. As the State suggested, had Vanderburg wanted the answers to the questions, he could have moved to compel the answers. Instead he moved to strike the entire deposition testimony. Vanderburg did not support his unorthodox motion with any authority demonstrating why the District Court should have excluded the testimony or how the District Court erred in not excluding the testimony.

In addition, the State argues that Vanderburg attempted to

impeach Nelson's credibility with evidence of prior convictions. Evidence of the character and conduct of a witness is generally inadmissible. Rule 404(a), M.R.Evid. However, Rule 608, M.R.Evid., permits character evidence under specific circumstances, for example, when the party puts the witness's character for truthfulness into issue and then only if the character evidence goes to the witness's veracity. State v. Courville (1989), 236 Mont. 253, 256, 769 P.2d 44, 46. "The exception is narrowly drawn in recognition of the opportunities for abuse when evidence of specific instances of conduct is offered. Thus the rule admits such evidence only on cross-examination and only if probative as to a witness's truthfulness or untruthfulness. . ." State v. White (1983), 202 Mont. 491, 496, 658 P.2d 1111, 1113 (citing 10 Moore's Federal Practice ¶ 608.21 (3d ed. 1986)). A party may not use extrinsic evidence of specific instances of misconduct for the purpose of attacking the witness's credibility. Courville, 769 P.2d at 46. "Rule 608(b), M.R.Evid., provides that specific instances of conduct by a witness, for the purpose of attacking or supporting his credibility, may not be proved by extrinsic evidence." State v. Gollehon (1993), 262 Mont. 1, 15, 864 P.2d 249, 258 (citing State v. Norris (1984), 212 Mont. 427, 689 P.2d 243).

Moreover, Rule 609, M.R.Evid., specifically prohibits evidence of a witness's prior convictions. "This Court has been adamant in prior rulings that Rule 609 be strictly enforced." Gollehon, 864 P.2d at 259. "Rule 609 specifically prohibits admission of

8

evidence that a witness has been convicted of a crime for purposes of attacking the credibility of the witness." Courville, 769 P.2d at 46.

In Gollehon we held that the district court did not abuse its discretion by refusing to allow the defendant to inquire into evidence of prior crimes committed by one of the State's eyewitnesses. Gollehon, 864 P.2d at 259. In White, we held that the district court erred "in permitting the interrogation of a witness, not a party to the suit, as to past instances of misconduct for the purpose of impeaching the witness." White, 658 P.2d at 1113.

In the instant case, neither Nelson nor the State put Nelson's character for truthfulness into issue. Yet Vanderburg sought to elicit answers to questions regarding specific instances of misconduct and evidence of prior misconduct. For example, at the deposition, Vanderburg's attorney asked Nelson:

> Were you, or had you been arrested and found guilty of possession of marijuana in the State of Washington?;
> On previous occasion [sic] . . . Did you sell marijuana?;
> Did you, were you in fact known to be a dealer of drugs in Spokane, Washington?;
> Are you aware of the fact that you have been accused in other court proceedings of being a drug dealer?;
> Isn't it true . . . that your neighbors have filed affidavits in which they were, say that you sold drugs out of your home?

Vanderburg clearly sought the answer to these questions to impeach Nelson's credibility. The questions were improper and Nelson did not have to answer them. We hold the District Court did not abuse its discretion in admitting into evidence Nelson's deposition

9

testimony that did not have answers to the above referred to improper line of questions, which Nelson had the right to refuse to answer.

2. Did the District Court err in failing to make particular findings of fact?

Vanderburg argues that the District Court failed to make at least eleven crucial findings of fact. The State counters each of the "crucial findings" and contends that the District Court need only make those findings upon which the District Court's conclusion rests.

Vanderburg presents eleven additional findings of fact that he claims the District Court should have made. For example, Vanderburg argues that the District Court should have found that Nelson returned to the motel room and asked for her suitcase. Vanderburg argues that this is a crucial fact because it links the marijuana to Nelson. The State, on the other hand, correctly notes that although the West Yellowstone Police Officer stated in his affidavit that Nelson asked for her suitcase, he testified that the clerk at the motel could not remember if Nelson asked for her suitcase or for a suitcase. Thus the State argues that the officer could not be sure of what Nelson said to the clerk and that the critical issue was where the money came from and not who owned the suitcase of marijuana.

Vanderburg also argues that the District Court should have found that the $21,000 seized in Vanderburg's car was consistent with Vanderburg's expenses for a year at school. The State counters Vanderburg's arguments stating that Vanderburg was not

10

enrolled in school at the time he was arrested and further that Vanderburg claimed that he intended to use the seized money for all of his school expenses only after the State introduced evidence that Vanderburg was financing his education with school loans.

Vanderburg's last asserted "crucial" finding of fact was that the District Court should have found that Vanderburg could not have physically reached his briefcase while driving his car. The State notes the evidence established that after Vanderburg left the Brandin' Iron Motel and before he was pulled over, he had time to stop his car, take money out of his briefcase, and give the money to Nelson.

Although Vanderburg argues that the District Court should have addressed these pieces of evidence in its findings, the District Court need not address all of the evidence presented. We have held that a district court need not specifically address each piece of evidence. Tindall v. Konitz Contracting, Inc. (1989), 240 Mont. 345, 351, 783 P.2d 1376, 1380. In fact, the district court need only set forth adequate findings and conclusions so that the reviewing court does not have to speculate as to the reasoning for the district court's decision. Tindall, 783 P.2d at 1380. Thus the essential and determining factors upon which the court's conclusions rest are sufficient. Moseman v. Moseman (1992), 253 Mont. 28, 31, 830 P.2d 1304, 1306.

The District Court set forth twenty findings of fact and five conclusions of law. Without any of Vanderburg's "crucial" findings of fact, the District Court provided ample reasoning for its

decision. We therefore hold that the District Court properly set forth the essential and determining facts upon which its conclusions rested.

3. Did the District Court err by failing to base its findings of fact and conclusions of law on substantial credible evidence?

Vanderburg alleges that six of the District Court's twenty findings of fact were clearly erroneous and thus not based on substantial credible evidence and that its conclusions were erroneous as a matter of law. In contrast, the State counters that Vanderburg's claims are baseless because the findings of fact were indeed based on substantial credible evidence and its conclusions were correct as a matter of law.

Our standard in reviewing a district court's findings of fact is whether the findings are clearly erroneous. Rule 52(a), M.R.Civ.P.; Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. In DeSaye, we adopted a three-part test to determine if a finding is clearly erroneous. DeSaye, 820 P.2d at 1287. The first part of the clearly erroneous standard is whether substantial evidence supports the finding. DeSaye, 820 P.2d at 1287. If that part of the test is met, we need go no further. We review a district court's conclusions of law to determine whether or not the district court correctly interpreted the law. Magone v. Froehlich (1995), 892 P.2d 540, 543, 52 St.Rep. 240, 242 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603).

Vanderburg first challenges the District Court's conclusion

that he failed to overcome the presumption of forfeiture by a preponderance of the evidence. Vanderburg alleges that preponderance of the evidence is not the correct standard and regardless of the correct standard, that he overcame the presumption of forfeiture.

Section 44-12-203, MCA, establishes the presumption of forfeiture. It states in part: "(1) There is a rebuttable presumption of forfeiture as to all property listed in 44-12-102. . ." The property listed in § 44-12-102, MCA, includes money used or intended for use in delivering any controlled substance in violation of Title 45, chapter 9, MCA. A claimant may rebut the presumption of forfeiture by proving that the property was not used for the purpose charged. See § 44-12-204(1), MCA. Rule 301(2), M.R.Evid., states:

> [A]ll presumptions, other than conclusive presumptions, are disputable presumptions and may be controverted. A disputable presumption may be overcome by a preponderance of evidence contrary to the presumption. Unless the presumption is overcome, the trier of fact must find the assumed fact in accordance with the presumption.

Additionally, we have held that a presumption remains until rebutted by a preponderance of contrary evidence. The presumption does not disappear unless the party opposing the presumption produces sufficient evidence to preponderate against it. Matter of 1988 Chevrolet Van (1991), 251 Mont. 180, 183, 823 P.2d 858, 860. In the instant case, the District Court correctly applied the preponderance of the evidence standard in determining if Vanderburg rebutted the presumption against forfeiture and therefore correctly interpreted the law.

13

In turn, Vanderburg asserts that Magone v. Aul (1994), 260 Mont. 281, 887 P.2d 1235, controls the instant case. He argues that regardless of the standard used by the District Court, it incorrectly concluded that Vanderburg had not overcome the presumption of forfeiture. Magone is clearly distinguishable from the instant case in part because it involved a motion for summary judgment. In Magone, the police officers initiated the forfeiture proceedings after the claimant had purchased drugs from an undercover police informant. Magone, 887 P.2d at 1236. The party that moved for summary judgment provided sworn affidavits rebutting the presumption of forfeiture and the non-moving party failed to set forth specific facts to create a genuine issue of material fact. Magone, 887 P.2d at 1237-38. Our decision hinged on uncontroverted affidavits in a motion for summary judgment and we held that sworn affidavits stating that the seized money came from an anniversary gift that the parents had given to the claimant and her husband constituted sufficient evidence to rebut the presumption of forfeiture. Magone, 887 P.2d at 1237-38.

In contrast, the instant case involves varying testimony at a bench trial. Vanderburg offered questionable testimony that the seized money belonged to Judy Cornell and was not proceeds from the sale of drugs. On the other hand, the State provided strong testimony and circumstantial evidence including a pound of marijuana, a scale, a loaded handgun, and a large amount of cash, all linking the money to the sale of marijuana. The District Court found substantial credible evidence and correctly interpreted the

14

law to conclude that Vanderburg failed to rebut the presumption of forfeiture.

Vanderburg next contends that the District Court's finding that Vanderburg's and Judy Cornell's testimony were not credible was not based on substantial credible evidence. "This Court will not substitute its judgment for that of the lower court regarding the credibility of the witnesses and the weight of their testimony." Matter of BTB (1992), 254 Mont. 449, 454, 840 P.2d 558, 560-61 (citing Smith-Carter v. Amoco Oil Co. (1991), 248 Mont. 505, 510, 813 P.2d 405, 408). Accordingly, we have consistently held that it is the province of the trier of fact to determine the credibility of witnesses. State v. Black (1995), 891 P.2d 1162, 1167, 52 St.Rep. 215, 218; State v. Flack (1993), 260 Mont. 181, 189, 860 P.2d 89, 94. In Flack, we held that:

> A trial court acting as a finder of fact is in the best position to observe the witnesses, including their demeanor and credibility. The weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact and, in the event of conflicting evidence, it is within the province of the trier of fact to determine which will prevail.

Flack, 860 P.2d at 94.

The District Court's determination of the credibility and the weight to give to the testimony of Vanderburg, Judy Cornell, and Nelson was exclusively within its province as the trier of fact. Similarly, the District Court's weighing of the evidence, including the discrepancies in testimony was within its province as the trier of fact. See Black, 891 P.2d at 1167. The substantial evidence available to the District Court supports its finding that Judy

15

Cornell's and Eleanor Clark's testimony was not credible.

We hold that the District Court correctly interpreted the law in applying the preponderance of the evidence standard and in concluding that Vanderburg failed to rebut the presumption of forfeiture. We also hold that the District Court's findings were supported by substantial credible evidence.

Affirmed.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

16